Ralph **NAPLETANA** and Rosanne M. Goldrick, Plaintiffs-Appellees,

v.

**HILLSDALE COLLEGE**, a corporation, Defendant-Appellant.

No. 17598.

United States Court of Appeals
Sixth Circuit.

Nov. 24, 1967.

Edward D. Wells, Grand Rapids, Mich., for appellant, Cholette, Perkins & Buchanan, Grand Rapids, Mich., on the brief, William J. Addison, Grand Rapids, Mich., of counsel.

Clay T. Brockman, Coldwater, Mich., for appellees.

Before EDWARDS and PECK, Circuit Judges, and CECIL, Senior Circuit Judge.

EDWARDS, Circuit Judge.

This is a damage action brought under the jurisdiction of the federal courts due to diversity of citizenship. 28 U.S.C. § 1332 (1964).

In this case a father and daughter, alleging that they were citizens of Ohio, filed suit against a Michigan college. The daughter was attending the college in 1962 when a radiator fell, injuring her left foot. The case was tried to a jury before Judge W. Wallace Kent, with the result of a judgment in favor of plaintiffs in the amount of $4,000.

This appeal presents only one question: whether the District Judge erred in denying defendant's motion to dismiss for lack of diversity jurisdiction.

At the time of the filing of this complaint, January 22, 1965, appellee, Mrs. Goldrick, was a teacher in the Shaker Heights schools, residing in Cleveland Heights, Ohio, with her parents. At that time, however, she was married. Her husband had moved to Michigan to take a new job four weeks before the filing of this complaint. Shortly thereafter, on February 1, 1965, at the conclusion of the school semester, Mrs. Goldrick joined her husband in Michigan.

█ The District Court had jurisdiction over this action if diversity of citizenship existed at the time the complaint was filed. Smith v. Sperling, 354 U.S. 91, 93 n. 1, 77 S.Ct. 1112, 1 L.Ed. 2d 1205 (1957); Grant County Deposit Bank v. McCampbell, 194 F.2d 469, 472,

31 A.L.R.2d 909 (6th Cir. 1952); 1 W. BARRON & A. HOLTZOFF, FEDERAL PRAC·TICE AND PROCEDURE § 26, at 139–40 (Wright ed. 1960). For purposes of the jurisdictional statute, 28 U.S.C. § 1332 (1964), a person is a citizen of a state if he is domiciled there. Williamson v. Osenton, 232 U.S. 619, 624, 34 S.Ct. 442, 58 L.Ed. 758 (1914); C. WRIGHT, HANDBOOK OF THE LAW OF FEDERAL COURTS § 26 (1963). Generally, diversity must exist between all plaintiffs and all defendants. Hence, regardless of her father's Ohio domicile, the domicile of Mrs. Goldrick is crucial to jurisdiction of this case. Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806); Grant County Deposit Bank v. McCampbell, 194 F.2d 469, 471, 31 A.L.R.2d 909 (6th Cir. 1952). But see generally ALI STUDY OF THE DIVISION OF JURISDICTION BETWEEN STATE AND FEDERAL COURTS 180–90 (Official Draft, part 1, 1965).

█ The boundaries of federal diversity jurisdiction must, of course, be determined basically by federal law. But customarily the federal courts look to state law, particularly the law of the states concerned, for definitions of terms such as "domicile" which are direct products of state law.

Appellant contends that Mrs. Goldrick's domicile necessarily followed her husband's domicile into Michigan prior to the filing of the complaint. This argument is based on the common-law doctrine that a married woman's domicile is that of her husband. See 25 AM.JUR.2d Domicil § 53 (1966). Appellees contend that the modern trend in the law is to recognize separate domiciles for husband and wife, if in fact they are residing in and intend to maintain separate domiciles in different states. Appellees argue that this is true where there is an agreement, express or implied, between husband and wife to maintain separate domiciles.

Professor Wright provides this definition of how a domicile may be changed.

"A citizen of the United States can change his domicile instantly. To do so, two elements are necessary. He

must take up residence at the new domicile, and he must intend to remain there. Neither the physical presence nor the intention to remain is alone sufficient." C. WRIGHT, HANDBOOK OF THE LAW OF FEDERAL COURTS § 26 (1963).

In one of the few federal court cases cited to us, the United States Court of Appeals for the District of Columbia held:

"Although the domicile of a wife ordinarily follows that of her husband, it is not so in this case. When Oxley left North Carolina in 1935, it was by agreement that his wife remained there and so her domicile remained in that state, despite the fact that he established a new domicile for himself in the District of Columbia." Oxley v. Oxley, 81 U.S.App.D.C. 346, 159 F.2d 10, 11 (1946) (Footnote omitted.)

This quotation mirrors the American Law Institute's RESTATEMENT OF CONFLICT OF LAWS:

"If a wife lives apart from her husband without being guilty of desertion according to the law of the state which was their domicil at the time of separation, she can have a separate domicil." RESTATEMENT OF CONFLICT OF LAWS § 28 (1934).

Early in the history of the Supreme Court of Michigan, Justice Cooley recognized exceptions to the common-law rule that a wife's domicile is that of her husband. People v. Dawell, 25 Mich. 247, 262 (1872).

Similarly, the Supreme Court of Ohio long ago recognized the principle that a married woman can have a domicile separate from that of her husband. Van Fossen v. State, 37 Ohio St. 317, 320 (1881).

█ We believe that for purposes of federal diversity jurisdiction a married woman can have a legal domicile separate from that of her husband. Our question in this case then becomes primarily one of fact—whether plaintiff Goldrick's residence and intent at the time of the filing of this complaint supports the conclusion that she was at that time domiciled in Ohio.

There is ample testimony to establish the fact of Mrs. Goldrick's lifetime residence in Ohio up to and beyond the date of the filing of the complaint in this case.

We also find evidence of the intent to remain there until February 1, 1965, in her testimony:

"Q. And where were you residing during the month of January, 1965?

"A. At the home of my parents.

"Q. And where was that?

"A. In Cleveland Heights, Ohio.

"Q. And what were you doing at that time, employmentwise?

"A. I was teaching first grade in Shaker Heights, Ohio.

"Q. And did you complete the first semester of teaching there?

"A. Yes, I did.

"Q. When did you move to Detroit or the Detroit area?

"A. On the first of February.

"Q. Of '65?

"A. '65, yes."

We believe this record establishes that Mrs. Goldrick resided in Ohio on January 22, 1965, and intended to remain there until the end of the school semester.

There is in this case no evidence of any marital rift or disagreement. Mrs. Goldrick's testimony concerning her intention to remain in Cleveland to the end of the school semester and her joining her husband in Michigan immediately thereafter allowed an inference that these arrangements were agreeable to both husband and wife.

█ On this record we find no error in the District Judge's denial of defendant's motion to dismiss this case for want of jurisdiction.

Affirmed.