MON-RITE CONSTRUCTION COMPANY, INC., APPELLANT, v.
NORTHEAST OHIO REGIONAL SEWER DISTRICT, APPELLEE.

(No. 47681—Decided October 9, 1984.)

S. *Melvin Kociubes,* for appellant.
*Linda D. Cerny,* for appellee.

PARRINO, P.J. Plaintiff, Mon-Rite Construction Company ("Mon-Rite"), appeals from the trial court's granting of defendant Northeast Ohio Regional Sewer District's ("Sewer District") motion for summary judgment. For the reasons adduced below, we hold that

summary judgment was properly granted.

I

This action arises out of a contract between Mon-Rite and the Sewer District known as "Cuyahoga Valley Interceptor Contract No. F-6, Northeast Ohio Regional Sewer District Contract No. 670." The contract was for the construction of the Northfield and Hawthornden Trunks of the Cuyahoga Valley Interceptor Sewer.

The contract was entered into on July 25, 1979, with Mon-Rite to begin work immediately. Contract F-6 provided for completion by December 6, 1980. Pursuant to Mon-Rite's request, the Sewer District authorized Contract F-6, Change Order No. 8, which extended the contract completion date to August 31, 1981. In October 1981, the parties executed a Contract Completion Certificate. Under a cover letter dated October 22, 1981, the Sewer District issued check No. 11174 in the amount of $23,954.16 as final payment for Contract F-6, which check was negotiated by Mon-Rite.

On January 20, 1982 Mon-Rite filed a complaint in common pleas court alleging damages incurred in the performance of Contract F-6. The complaint was amended by Mon-Rite and now alleges three basic claims for relief.

The first claim arose out of what Mon-Rite alleges was incorrect, faulty and defective information given by the Sewer District regarding the ground condition to be encountered. Mon-Rite contends that the actual ground condition under the Ohio Canal required hand mining to ensure safety of persons and property. The contract, however, limited the methods of making the canal crossing. Pursuant to the contract's construction specifications, the sewers could be placed only within a bored casing or by the jacking method.

Mon-Rite requested in writing that the specifications be changed to permit hand mining the tunnel under the canal. Although the Sewer District refused to allow the change, Mon-Rite commenced hand mining the tunnel. The Sewer District was informed of Mon-Rite's decision in a letter dated November 28, 1979.

On February 11, 1980 Mon-Rite notified the Sewer District of another change in the ground condition which permitted the usage of the bored casing procedure. Mon-Rite abandoned its hand tunneling in favor of the bored casing procedure.

On September 19, 1980, pursuant to a provision in Contract F-6, Mon-Rite made a formal request for an equitable adjustment of compensation in the amount of $50,081.88. This amount allegedly represents the extra costs Mon-Rite incurred due to the Sewer District's faulty and defective information regarding the ground condition to be encountered. The Sewer District investigated the claim, and in a letter dated November 13, 1980, denied the claim. It was the Sewer District's position that the ground conditions indicated in the contract specifications were identical to those actually encountered on the job.

Mon-Rite's amended complaint sought recovery of damages in connection with this claim in the amount of $50,081.88 for increased costs for labor, materials, and equipment.

The second claim relates to an obstruction encountered by Mon-Rite on or about March 1, 1980 which caused a fault to develop in the bottom of the Ohio Canal and flooded the entire boring operation. The obstruction was later determined to be a sheet piling cutoff wall. Pursuant to Contract F-6's "Differing Site Conditions" clause, Mon-Rite made a written claim for an equitable adjustment in the contract.

The Sewer District's consulting engineer, Euthenics, Inc., determined that the best alternative was to reroute

the sewer so as to avoid the obstruction. After negotiations, Mon-Rite on April 15, 1980 submitted its monetary claim and a change order was granted for the damage caused by the obstruction. The Sewer District authorized Contract F-6, Change Order No. 2, which granted an equitable adjustment for Mon-Rite's costs in controlling the canal water, recovery of its boring machine, and repairing the bottom of the canal, in the amount of $46,938.25.

In addition, Mon-Rite submitted its costs for construction of the sewer along the proposed realignment. An agreement was reached between the parties stipulating that additional costs which would be incurred by Mon-Rite to seal the existing bore under the canal and to realign the sewer totaled $128,142.00. These costs were then offset by the costs for items not performed due to the discontinuation of the original alignment, which offset amounted to $115,298. These negotiations culminated in the Sewer District's authorization on May 15, 1980 of Contract F-6, Change Order No. 3, which provided for an increase in the contract amount of $12,844.

Mon-Rite now contends that it was damaged beyond the equitable adjustments made in Change Order Nos. 2 and 3. Mon-Rite alleges damages of $30,688.42 for job overhead cost during delay for redesign, and $62,492.77 for cost of idle equipment during delay for redesign.

Mon-Rite's third and final claim arises out of a second obstruction and excessive leakage. The claim was made by Mon-Rite on July 14, 1980. On September 23, 1980 Mon-Rite sent the Sewer District a cost analysis of the damages. Mon-Rite contends that the obstruction was a piece of steel plate wedged into boulders used for fill in the construction of Canal Road.

The Sewer District investigated the claim and determined that the excessive leakage was due to Mon-Rite's poor set up and operating and that the second obstruction did not in fact exist. Therefore, the Sewer District denied the claim for compensation.

Mon-Rite claims damages in its amended complaint in the amount of $40,373.25 for increased labor and equipment costs due to the obstruction and $5,730.77 for job overhead costs.

In addition to the above enumerated damages, Mon-Rite's amended complaint alleges further damages caused by the faulty design, redesign and obstructions in the amount of $81,932.30 for general overhead costs; $9,126.98 for increased labor costs, $3,023.36 for increased cost of trees which had to be purchased, and finally $84,374.28 in lost profit from decreased sales.

On August 29, 1983 the Sewer District filed a motion for summary judgment with supporting evidence. The Sewer District's brief in support argued that the Sewer District was entitled to judgment as a matter of law because Mon-Rite's acceptance of final payment released the Sewer District from liability; Mon-Rite's failure to give notice prior to final payment precludes recovery; and the no damage for delay clause in the contract limits liability. The trial court granted the motion for summary judgment and dismissed the action. Mon-Rite now appeals, raising a single assignment of error:

"(A) The Trial Court erred in granting Appellee-Defendant's Motion for Summary Judgment because there are genuine issues of fact in this case."

II

The trial court may grant summary judgment if it finds that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. Civ. R. 56. In the case *sub judice,* the Sewer District alleged in its motion that it was entitled to judgment as a matter of law, setting

forth three theories in support of this claim.

The Sewer District's first theory was as follows:

"A. Mon-Rite's Acceptance of Final Payment Released the Sewer District of Any Liability to Mon-Rite."

Applying the applicable contract provisions of Contract F-6 and basic principles of contract law, it is clear that under the contract in question acceptance of final payment did release the Sewer District of any liability.

Contract F-6 at SC-22, Termination of C.R.S.D.'s[1] Responsibility, provides in pertinent part:

"The acceptance by the contractor of the final payment shall operate as and shall constitute a release to the C.R.S.D. and its agents from any claim or liability to the Contractor for anything done or furnished for or relating to the work."

The validity of a clause providing for release upon final payment is well-established. In *Brandt Corp. v. New York* (1964), 14 N.Y.2d 217, 250 N.Y.Supp.2d 407, the Court of Appeals of New York held that a contractor which had accepted final payment under a contract which contained a provision that the city was to be released from all claims upon acceptance of final payment could not thereafter assert claims for additional sums. *Id.* at 220, 250 N.Y.Supp. 2d at 409. See, also, *NRS Constr. Corp. v. Bd. of Edn.* (1983), 92 App. Div.2d 803, 460 N.Y.Supp.2d 50.

It is also clear that the presentation of a claim prior to acceptance of final payment does not alter the effect of a final payment provision. The underlying rationale has been expressed in *Oakhill Contracting Co. v. New York* (1941), 262 App. Div. 530, 30 N.Y.Supp.2d 567, where the court held:

"It is to be remembered that the

provision in the contract relied on by defendant is to the effect that acceptance of the final payment *ipso facto* released the city from liability for anything done by the contractor in connection with performance of the work. Therefore, the delivery of a general release was a wholly unnecessary step. Under the contract, the mere acceptance of payment constituted a release. Accordingly, any reservation contained in the general release would be entirely ineffective. It could not alter the contract, nor could it create any new rights in the plaintiff. Any custom or practice which might have existed with respect to general releases could not vary rights expressly and clearly provided for by the contract. * * * Nothing short of a modification of the contract, or a waiver of its provisions would avoid the effect of accepting the final payment." *Id.* at 532, 30 N.Y.Supp. 2d at 570.

Appellant contends however, that the clause is inapplicable in the instant case because it is in conflict with a provision of the "Appendix C-2-Required Provisions Construction Contracts." These supplemental provisions are required by the United States Environmental Protection Agency which partially funded the project. The supplemental provisions begin as follows:

"The owner and the contractor agree that the following supplemental provisions apply to the work to be performed under this contract and that these provisions supersede any conflicting provisions of this contract."

Mon-Rite goes on to argue that supplemental provision 3(C) under "Differing Site Conditions" is in conflict with the SC-22 final payment clause and thus the final payment clause is invalid. Provision 3(C) under "Differing Site Conditions" provides as follows:

"No claim by the contractor for an equitable adjustment hereunder shall be allowed if asserted after final payment under this contract."

---

[1] Northeast Ohio Regional Sewer District was formerly known as the Cleveland Regional Sewer District (C.R.S.D.).

It is an established principle of contract law that "no provision [of a contract] is to be wholly disregarded because [it is] inconsistent with other provisions unless no other reasonable construction is possible * * *. If reasonable effect can be given to both, then both are to be retained." *German Fire Ins. Co.* v. *Roost* (1897), 55 Ohio St. 581, 585. Furthermore, Contract F-6 at FSR-63 provides that "the District and Federal contract sections are intended to be complementary and should be read in concert, not separately, and are not intended to require any different performance." In the case at bar reasonable effect can be given to both, thus both are retained.

A comparison of the SC-22 and C-2 provisions reveals that no conflict exists. The C-2 provision limits the right to bring claims to those asserted prior to final payment. There is nothing in the C-2 provision which either authorizes or prohibits litigation of properly asserted claims subsequent to acceptance of final payment. The SC-22 final payment provision fills that void by expressly releasing the Sewer District's liability upon acceptance of final payment. These provisions are not in conflict with each other and thus both are applicable.

Mon-Rite also alleges that there is a genuine issue of material fact as to whether there was a final payment. The record reveals, however, that the Sewer District attached sufficient evidence to establish final payment.

Attached to the Sewer District's motion was a letter dated October 22, 1981 which calculated the Sewer District's final debt to Mon-Rite. This letter contains the words "final payment" in three separate places. Also included as evidence was the check for final payment which was sent with the letter of October 22, 1981. Check No. 11174 was made payable to Mon-Rite Construction Co. in the amount of $23,954.16. It also referred to the payment as "final" in two places. Mon-Rite did not submit any evidence contesting the fact that final payment was made. It is also an undisputed fact that Mon-Rite negotiated the check.

Case law is well-settled that negotiating a check and retaining the proceeds constitutes acceptance of the check. Justice Cardozo succinctly answered this question in *Hudson* v. *Yonkers Fruit Co.* (1932), 258 N.Y. 168, 179 N.E. 373: "Protest will * * * be unavailing if the money is retained. What is said is overriden by what is done and assent is imputed as an inference in law." *Id.* at 171, 179 N.E. at 374. Therefore, the trial court properly concluded that final payment was tendered and accepted as a matter of law.

Finally, Mon-Rite contends that enforcement of such a clause is unconscionable. This clearly is not the case however. The release clause is included in order to establish finality with respect both to subject matter of each contract and the Sewer District's financial responsibility in connection therewith. Furthermore, the contracting parties were both represented by counsel and the contract was negotiated at arm's length. In such a case the parties are presumed to be aware of the contract's language and are properly bound by it.

### III

The Sewer District's motion for summary judgment was properly granted based on its first theory, *i.e.,* acceptance of final payment releases the Sewer District of all liability. It is therefore unnecessary to discuss at this time the merits of the Sewer District's other two theories to bar recovery.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

NAHRA and RUSSO, JJ., concur.