WURTH ET AL., APPELLEES AND CROSS-APPELLANTS, *v.* IDEAL MUTUAL INSURANCE CO.; TWIN CITY FIRE INSURANCE CO. ET AL., APPELLANTS AND CROSS-APPELLEES; OHIO INSURANCE GUARANTY ASSN., APPELLEE AND CROSS-APPELLANT.

(Nos. CA86-02-011, -03-022 and -04-026—Decided April 27, 1987.)

*Baden, Jones, Scheper & Crehan Co., L.P.A., Matthew J. Crehan* and *Bradley J. Histed,* for plaintiffs-appellees and cross-appellants, Michael and Linda Wurth.

*William F. Jerome,* for Ideal Mutual Insurance Co.

*Smith & Schnacke, John E. Tate* and *John T. Sunderland,* for defendants-appellants and cross-appellees, Twin City Fire Insurance Co. and Baccala & Shoop Insurance Service.

*Vorys, Sater, Seymour & Pease, Jonathan M. Norman, Yolanda V. Vorys* and *Gregory A. Ruehlmann,* for defendant-appellee and cross-appellant, Ohio Insurance Guaranty Association.

*Lindhorst & Dreidame* and *Steven A. Bailey,* for Chubb Group Insurance Co.

*Taft, Stettinius & Hollister, James M. Hall, Jr.* and *Michael A. Byers,* for Home Insurance Co.

*Bieser, Greer & Landis* and *Michael W. Krumholtz,* for Great Southwest Fire Insurance Co.

*James L. Flannery,* prosecuting attorney, and *Tim Oliver,* for Warren County, Edward Hizar and Robert D. Coburn.

*Daniel J. Buckley,* for State Auto Insurance Co.

*Per Curiam.* This cause came on to be heard upon an appeal from the Court of Common Pleas of Warren County.

This is an appeal by defendants-ap-

pellants and cross-appellees, Twin City Fire Insurance Company and Baccala and Shoop Insurance Service (referred to together hereinafter as "Twin City"), defendant-appellee and cross-appellant, the Ohio Insurance Guaranty Association (hereinafter "OIGA"), and plaintiffs-appellees and cross-appellants, Michael and Linda Wurth (hereinafter "the Wurths"), from a decision of the Court of Common Pleas of Warren County which awarded the Wurths summary judgment against Twin City and OIGA on their claim for $24,500.

On May 19, 1982, Michael Wurth was involved in a head-on automobile collision with a vehicle owned and operated by Gary York. The two automobiles collided on a section of Greentree Road where road repairs were underway and only one lane of travel, which was controlled by a radio-connected operator on each end, was available.

The company performing the road repairs employed the Warren County Sheriff's Department to direct traffic during its work. Although the particulars are not disclosed in the record, somehow the two deputy sheriffs controlling this single lane of traffic simultaneously dispatched Wurth and York toward one another. The foreseeable result was their collision.

The Wurths filed suit in the Court of Common Pleas of Warren County against, *inter alia,* the two deputies controlling the traffic when the collision occurred and certain other Warren County officials. In due course, a $75,000 settlement agreement was reached. Of this $75,000, the malpractice insurer of the Warren County Sheriff's Department, Ideal Mutual Insurance Company, agreed to pay $24,500. A check for this amount was drafted and sent to the Wurths' attorney. However, when it was presented for payment at its New York drawee bank, it was dishonored because Ideal Mutual was insolvent.

Appellees filed this declaratory judgment action in an attempt to determine who, if anyone, was financially responsible for upholding Ideal Mutual's settlement agreement. Twin City was made a party to this action because, through its sales agent, Baccala and Shoop Insurance Service, it provided Warren County and its employees with an "excess" insurance policy, *i.e.,* a policy against liability in excess of the limits of its other (primary or underlying) liability policies. Also named as a defendant was OIGA, a statutorily created (R.C. Chapter 3955) nonprofit unincorporated association which, using monies collected from member contributions, provides insurance benefits when, *inter alia,* an insurance provider is insolvent and all other insurance is either exhausted or insufficient.

With little more in the file than the initial pleadings and a copy of Twin City's excess liability insurance policy, the Wurths, Twin City and OIGA all filed motions for summary judgment. The Wurths claimed either Twin City, based on the terms of its policy, or OIGA, based on Ohio statutes, was liable to them in place of Ideal Mutual. Twin City's summary judgment motion claimed that it was not liable to the Wurths based on the terms of its policy, either as a primary insurer in place of Ideal Mutual or in any other way, and that, consequently, it was entitled to summary judgment. OIGA moved for summary judgment claiming, based on certain Revised Code sections, there was other insurance available to the Wurths which was not exhausted, so it had no liability.

Faced with these motions, the trial court awarded the Wurths summary judgment for $24,500 against Twin City and OIGA, with Twin City being found primarily liable, and OIGA sec-

ondarily liable. The trial court, however, denied the Wurths' motion for prejudgment interest.

Dissatisfied with the trial court's ruling, Twin City, OIGA and the Wurths have all filed notices of appeal.

For its assignments of error, Twin City asserts:

### Assignment of Error No. 1

"The trial court erred as a matter of law in failing to grant defendants-appellants Twin City and Baccala and Shoop's motion for summary judgment."

### Assignment of Error No. 2

"The trial court erred as a matter of law in granting plaintiffs' motion for summary judgment against Twin City and Baccala and Shoop."

For its sole assignment of error on its cross-appeal, OIGA claims:

"The trial court erred in failing to grant the motion for summary judgment filed by the OIGA and by determining that the OIGA is secondarily liable for the loss at issue."

For their assignments of error, the Wurths, as cross-appellants, claim:

### Assignment of Error No. 1

"If the court finds that summary judgment was inappropriate against [Twin City], then summary judgment should be entered against the defendant/cross-appell[ant] Ohio Insurance Guaranty Association on this covered claim against an insolvent insurer."

### Assignment of Error No. 2

"If the court finds that summary judgment was inappropriate against appellants Twin City and Baccala and Shoop and cross-appell[ant] Ohio Insurance Guaranty Association, the underlying settlements and releases should be set aside."

### Assignment of Error No. 3

"The trial court erred in not grant-ing plaintiffs-appellees/cross-appellants' demand for prejudgment interest under O.R.C. 1343.03."

## I
### Twin City's Appeal

For its two assignments of error, Twin City claims that the trial court erred in granting the Wurths' summary judgment motion and denying its like motion. According to Twin City, the trial court erred by holding that Twin City's excess liability insurance agreement with Warren County "dropped down" and became primary coverage when Warren County's actual primary insurer, Ideal Mutual, became insolvent.

The Wurths and OIGA, on the other hand, argue that we should adopt a "drop down" theory of liability for excess liability insurers where the primary or underlying provider is insolvent. Under such a theory, an excess liability insurer drops down and assumes the role of the insolvent primary provider.

We believe from reading the cases brought to our attention by the parties that two basic rationales have been used to justify adoption of "drop down" rules in other states. The first is simply a public policy argument which holds essentially that as between insureds and insurers, the latter are better able to absorb the risk of primary provider insolvency than are the former. Accordingly, when a primary provider is insolvent and an excess insurance coverage provider exists, liability is imposed on the excess provider so that the general public remains protected and the insurance industry absorbs the loss caused by the insolvency of one of its members. The second theory for imposing "drop down" liability on an excess coverage provider is policy ambiguity, which results in the ambiguity's being resolved in favor of the insured. This is the basis

on which the Wurths have alleged Twin City's "drop down" liability.

## A
## Drop Down Liability as a Matter of Public Policy

Both OIGA and the Wurths recognize Twin City's insurance policy was originally written to provide excess coverage insurance (*i.e.,* that it was insurance written to cover losses in excess of Warren County's primary insurance coverage).

That one insurance provider affords an insured excess liability insurance over and above the policy limits of a named or unnamed primary or underlying insurer should not, and does not, in and of itself, also impose upon that excess provider the risk of an underlying provider's insolvency. To so hold would effectively impose on excess coverage providers the burden of scrutinizing the financial stability of every other primary provider, *Continental Marble & Granite* v. *Canal Ins. Co.* (C.A. 5, 1986), 785 F. 2d 1258, and place the risk of loss for securing an insolvent insurer not on the insurance purchaser, who purchased the policy, but on the excess coverage provider, who never contracted to cover such a contingency. To this court, such a state of affairs would constitute not only an unjust shifting of the risk of insolvency, but a rewriting of an excess insurer's general contractual undertaking simply to fulfill "notions of abstract justice." *Breed* v. *Ins. Co. of North America* (1982), 46 N.Y. 2d 351, 355, 413 N.Y. Supp. 2d 352, 355; see, also, *Shelton* v. *Equitable Life Assur. Soc. of United States* (1961), 28 Ill. App. 2d 461, 469, 171 N.E. 2d 787, 790-791.

It seems to us, by definition and longstanding principle, that an excess insurer is not generally liable for any part of the loss or damage which is covered by other insurance (be it collectible or uncollectible), but is liable only for the amount of loss or damage in excess of the coverage provided by all other applicable insurance policies. 16 Couch on Insurance 2d (1983) 484, Section 62:48. To adopt, due to public policy, a theory of "drop down" liability would fundamentally alter the risk an excess coverage provider is obligated to provide by agreeing to issue excess liability insurance protection. Therefore, we hold "drop down" liability. protection should not be judicially imposed on Ohio excess insurance providers as a matter of public policy.

In leaving this discussion, however, we would note that while we are not willing to judicially impose "drop down" liability on an excess insurance provider as a matter of public policy, we recognize that the inclusion of specific policy language manifesting an agreement by the excess insurer to "drop down" and become the primary insurer, due to the insolvency of the primary insurer, may be expressly written into an excess liability policy. Where such language is found in an excess insurance policy, the risk of loss due to the primary carrier's insolvency is shifted because *presumably* the excess carrier has computed and added the necessary premium adjustment.

## B
## Drop Down Liability Based on the Language Used by the Excess Liability Policy

The second fundament on which "drop down" liability is imposed is policy ambiguity. The Wurths and OIGA contend that the following language (contained in paragraph 8 of the Twin City policy's "Conditions" section) causes Twin City's excess insurance to drop down and become primary coverage:

"8.   Other Insurance

"The insurance afforded by this policy shall be excess insurance *over*

*any other valid and collectible insurance* (except when purchased specifically to apply in excess of this insurance) available to the insured, whether or not described in the Schedule of Underlying Insurance Policies, and applicable to any part of ultimate net loss, whether such other insurance is stated to be primary, contributing, excess, or contingent * * *." (Emphasis added.)

Using this policy language and the longstanding rule that any ambiguity in an insurance contract must be construed against the insurer who wrote it, *Munchick* v. *Fid. & Cas. Co.* (1965), 2 Ohio St. 2d 303, 31 O.O. 2d 569, 209 N.E. 2d 167, paragraph one of the syllabus, the Wurths and OIGA submit that because Ideal Mutual became insolvent and was unable to pay its settlement agreement with the Wurths, Ideal Mutual's insurance was *valid but uncollectible* and, therefore, Twin City's excess liability coverage was drawn into the void, or, to use OIGA's choice of language, liability was "imposed" on Twin City.

When construing the contents of an insurance contract, some general and well-established rules of construction must be observed. First, the plain meaning of unambiguous language in an insurance policy should be enforced as written. *Rhoades* v. *Equitable Life Assur. Soc. of United States* (1978), 54 Ohio St. 2d 45, 47, 8 O.O. 3d 39, 40, 374 N.E. 2d 643, 644. Ambiguous policy language is construed against the insurer because it must accept the responsibility for the wording chosen. *Munchick, supra.* Construction or interpretation of insurance contracts should attempt to discern and enforce the intention of the parties. *Germania Fire Ins. Co.* v. *Schild* (1903), 69 Ohio St. 136, 139-140, 68 N.E. 706; *E.S. Preston Assoc. Inc.* v. *Preston* (1986), 24 Ohio St. 3d 7, 9-10, 24 OBR 5, 8, 492 N.E. 2d 441, 444-445. When two or more provisions of a contract appear to conflict, the construction or interpretation which should be used is one which gives effect to both provisions, unless no such construction is reasonably possible. *German Fire Ins. Co.* v. *Roost* (1897), 55 Ohio St. 581, 585, 45 N.E. 1097, 1099; *Mon-Rite Constr. Co.* v. *Northeast Ohio Regional Sewer Dist.* (1984), 20 Ohio App. 3d 255, 259, 20 OBR 317, 321, 485 N.E. 2d 799, 802-803. Finally, in concert with the previous rule, contracts should be interpreted or construed based on their entire content and not isolated portions. *Burdett Oxygen Co. of Cleveland* v. *Employers Surplus Lines Ins. Co.* (C.A. 6, 1969), 419 F. 2d 247.

Under Item I (Coverage), Twin City's policy provides:

"The company will indemnify the insured for ultimate net loss *in excess of the underlying limit* or the self-insured retention, whichever is greater * * *." (Emphasis added.)

The self-insured retention listed on the policy declaration sheet is $10,000. We are informed that Ideal Mutual's maximum coverage was $500,000.

In Item V entitled "Definitions," "underlying limit" is defined as:

" * * * [W]ith respect to each occurrence to which this policy applies the amounts of applicable limits of liability of the underlying insurance as stated in the Schedule of Underlying Insurance Policies less the amount, if any, by which any aggregate limit of such insurance has been reduced by payment of loss. * * *"

In the "Conditions" section of Twin City's policy, paragraph 7, which immediately precedes the paragraph relied on by the Wurths and OIGA, reads:

"7.  Loss Payable

"The insured shall make claim for any loss under this policy as soon as practicable after (a) the *insured shall have paid ultimate net loss in excess of*

*the underlying limit* or the self-insured retention with respect to any occurrence * * *." (Emphasis added.)

An insurer is entitled to have the titles provided to the various sections of its policy recognized by a court in interpreting those sections. *Howe v. Crumley, Jones & Crumley Co.* (App. 1944), 44 Ohio Law Abs. 115, 57 N.E. 2d 415. The "Conditions" paragraph which contains the "valid and collectible" language, upon which appellees rely, is number 8 and entitled "Other Insurance." Based on our reading of this paragraph, we conclude that it is intended to provide a framework for assigning contribution obligations among all other applicable insurance providers of either primary, contributing, excess or contingent coverage.

As we read Condition 8, "collectible" does not refer to the actual payment of a sum of money, but instead refers to the existence of other applicable insurance coverage based on the particular occurrence in question. Whether payment of other applicable and available insurance (be it primary, contributing, excess or contingent) actually takes place is not the focus of inquiry under the paragraph in question. Instead, the focus is on the *existence* of such applicable and available insurance. *Molina v. United States Fire Ins. Co.* (C.A. 4, 1978), 574 F. 2d 1176; *Geerdes v. St. Paul Fire & Marine Ins. Co.* (1983), 128 Mich. App. 730, 341 N.W. 2d 195; *St. Vincent's Hospital &*

*Medical Center v. Ins. Co. of North America* (1982), 117 Misc. 2d 665, 457 N.Y. Supp. 2d 670.

Whatever confusion the use of the word "collectible" in paragraph 8 creates, it cannot overcome the paragraph's attendant declaration that it is "excess" liability coverage for amounts "over," *i.e.,* above, beyond, greater than, or exceeding, any other available and applicable insurance except such insurance as is specifically purchased to be in excess of Twin City's excess policy.[1] We see no ambiguity when this condition is read in its entirety and in concert with other paragraphs of this policy's "Conditions" section.[2]

After examining Twin City's entire policy and using the previously provided rules of interpretation and construction, we conclude that there is no ambiguity in Twin City's policy as to its coverage. Indeed, it is clear that it was never the intention of Twin City and Warren County that the former should become the latter's primary insurance provider in the event Ideal Mutual became insolvent. Consequently, the trial court erred in concluding that due to a policy ambiguity, Twin City "dropped down" to provide primary liability coverage when Ideal Mutual became insolvent. We believe that the trial court, OIGA, and the Wurths focused all their attention on one sentence of this policy's "Conditions" section and relied upon it to the

---

[1] Condition 8 is itself supported by Condition 14 entitled "Maintenance of Underlying Insurance," which provides that in the event that the insured fails to maintain primary insurance as promised, Twin City's policy does not "drop down" but continues to provide excess insurance as if the primary coverage which was supposed to have been obtained was, in fact, purchased.

[2] For example, see Condition 7, entitled "Loss Payable," which immediately precedes "Other Insurance." This paragraph

makes it clear that a loss is *not* payable by Twin City until "the insured has paid the ultimate net loss in excess of the underlying limit or self-insured retention with respect to any occurrence." *Guaranty Natl. Ins. Co. v. Bayside Resort, Inc.* (D.V.I. 1986), 635 F. Supp. 1456, 1459. Thus, until Warren County demonstrated it made payment to the Wurths in excess of its underlying police malpractice policy limits, Twin City had no excess insurance coverage obligation based on this occurrence.

exclusion of the balance of the contract. Such an interpretation is distorted and legally inappropriate.

Since it has been recognized in this state that an injured person has no greater rights to an insurance contract's benefits than the policy's insured, *Luntz* v. *Stern* (1939), 135 Ohio St. 225, 230, 14 O.O. 62, 64, 20 N.E. 2d 241, 243-244, and since Warren County had no excess liability policy rights until its underlying policy's limits were exhausted, the Wurths acquired no rights against Twin City either.

Since Twin City's coverage did not "drop down" and become the primary insurer when the actual primary insurer, Ideal Mutual, became insolvent, the trial court erred in concluding as a matter of law that it did. Consequently, Twin City's first assignment of error is sustained.

For its second assignment of error, Twin City claims that the trial court erred in granting the Wurths' motion for summary judgment. We agree.

We sustain this assignment of error based on our resolution of the "drop down" question in the first assignment of error.

While Twin City has argued in its brief in support of its second claimed error that certain issues of material fact remained at the time the Wurths were granted summary judgment,[3] it failed to provide any Civ. R. 56(C) evidentiary materials supporting such a proposition. Generally, a defendant may not rely on the denials of his pleadings to defeat a motion for summary judgment. *Keister* v. *Park Centre Lanes* (1981), 3 Ohio App. 3d 19, 23, 3 OBR 20, 24-25, 443 N.E. 2d 532, 536.

## II
## OIGA's Cross-Appeal

For its sole assignment of error,

OIGA claims that the trial court erred both by failing to grant its motion for summary judgment and by determining that OIGA is secondarily liable for the loss at issue. We agree that the trial court erred in finding OIGA secondarily liable along with Twin City but affirm the trial court's overruling of OIGA's motion for summary judgment.

Summary judgment is not appropriate unless the movant is entitled to judgment as a matter of law. Civ. R. 56(C). Under R.C. 3955.13, the Wurths would not be entitled to any recovery from OIGA until all other possible sources of insurance recovery had been exhausted. However, by the same token, if all other applicable insurance besides Ideal Mutual's was exhausted before the Wurths were fully compensated for their loss, OIGA would be statutorily obligated, under R.C. 3955.08(A)(4), to make some form of settlement with the Wurths.

Based on OIGA's concession in its summary judgment motion that the Wurths' motion for summary judgment was premature as to certain insurers, such as the Chubb Group, it is also now too soon to determine whether OIGA will have any liability to the Wurths. Conceivably, other available insurance may completely compensate them for their loss despite Ideal Mutual's insolvency. Until the Wurths are fully and completely compensated for their loss due to Ideal Mutual's insolvency, summary judgment for OIGA is not appropriate. Accordingly, the trial court properly denied OIGA's motion for summary judgment.

However, the trial court did err in finding OIGA secondarily liable. Under the statutory scheme set forth in R.C. Chapter 3955, OIGA steps into the shoes of an insolvent insurance com-

---

[3] These issues concerned, *inter alia,* whether Warren County had complied with its obligations under the excess liability policy's Conditions sections.

pany for liability purposes and then acts as a source of last resort for uncompensated but otherwise valid claims. R.C. 3955.08(A)(2) and (4). As we read R.C. Chapter 3955, once all other insurance is exhausted, OIGA is only liable for the same claims as the insolvent insurer would have been, and then only up to the insolvent insurer's policy limits.

Since OIGA only contributes to a covered loss once all other applicable insurance is exhausted, it could not be liable along with another insurer for the Wurths' claim. Consequently, irrespective of whether Twin City is liable to the Wurths on a "drop down" theory, OIGA could not be secondarily liable unless some or all of the $24,500 agreed to be paid by Ideal Mutual was uncollectible. Accordingly, the trial court erred in holding OIGA secondarily liable along with Twin City to the Wurths. If OIGA is liable to the Wurths at all under R.C. Chapter 3955, it is because all other applicable insurance has been exhausted, with the Wurths still not fully compensated for their loss.

### III

### The Wurths' Cross-Appeal

For their first assignment of error on their cross-appeal, the Wurths claim that if the trial court erred in awarding summary judgment against Twin City, then summary judgment should now be awarded against OIGA. We disagree.

When the trial court granted the Wurths summary judgment against Twin City and OIGA, it still had before it two additional insurance companies which apparently insured Warren County in an undisclosed capacity. These insurance companies' policies are not in the record before us. Because OIGA, as we have previously noted, is only liable for an insolvent insurer's claims when all other applicable insurance is exhausted (and we do not know the nature or extent of these other insurers' coverages), we cannot agree with the Wurths that summary judgment against OIGA is now appropriate. The record before us is too sparse for such a determination at this time. Thus, the Wurths' first assignment of error is overruled.

For their second assignment of error on their cross-appeal, the Wurths assert that if this court now finds summary judgment is not appropriate against Twin City or OIGA, then we should set aside the releases executed herein.

Since this motion has not been ruled upon by the trial court below, we decline to rule upon it now.

For their third and final assignment of error on their cross-appeal, the Wurths allege they should be awarded prejudgment interest on the $24,500 settlement agreement which has, to date, not been collected.

Since in our resolution of the direct appeal, we have found that summary judgment for Twin City was appropriate and should have been granted, we limit our consideration of this assignment of error to OIGA. With respect to OIGA, we find it has no merit.

OIGA's liability, if any, to the Wurths has not yet been determined and is dependent on the applicability and extent of insurance coverage provided to Warren County by insurance companies who are not a part to this appeal. Clearly, if OIGA is liable to the Wurths, it is because of events and policy language totally outside its control. For all practical purposes, OIGA cannot know its exact liability to the Wurths until the policies of other insurers are examined. Only then will OIGA's liability, if any, be determined.

Since we agree with OIGA that its liability attaches by operation of law, and since any liability is premised upon events totally outside OIGA's control,

we find the trial court did not abuse its discretion in denying the Wurths' prejudgment interest claim with respect to OIGA's liability on this $24,500. *Maintenance Unlimited, Inc.* v. *Salemi* (1984), 18 Ohio App. 3d 29, 18 OBR 54, 480 N.E. 2d 113, paragraph three of the syllabus.

## IV
### Conclusion

We sustain Twin City's two assignments of error finding that the trial court should have granted its motion for summary judgment and overruled the Wurths' like motion.

We overrule OIGA's assignment of error claiming that it was entitled to summary judgment but agree with OIGA that the trial court erred in holding OIGA secondarily liable to the Wurths for the amount in issue here.

Finally, we overrule the Wurths' assignments of error seeking prejudgment interest and asking that we grant them summary judgment against OIGA. We decline to address whether the releases the Wurths executed should be set aside because that issue has not been properly presented to this court.

We reverse the summary judgment decision against Twin City and OIGA, and remand with instructions that the trial court enter judgment for Twin City on the issue of its liability to the Wurths on the facts presented herein, and for further proceedings.

It is the order of this court that the judgment or final order herein appealed from be, and the same hereby is, affirmed in part and reversed in part and this cause is remanded for further proceedings according to law and not inconsistent with this decision.

*Judgment affirmed in part,*
*reversed in part and*
*cause remanded.*

JONES, P.J., HENDRICKSON and CASTLE, JJ., concur.

CASTLE, J., retired, of the Twelfth Appellate District, was assigned to active duty pursuant to Section 6(C), Article IV, Constitution.