**Steven BATEMAN, Plaintiff,**

v.

**E.I. DuPONT DE NEMOURS & CO., a Delaware corporation, and Charles Enzinger, Defendants.**

No. 96–CV–72371.

United States District Court,
E.D. Michigan,
Southern Division.

June 11, 1998.

John Sikos, Grosse Pte. Farms, MI, for Plaintiff.

George R. Ashford, Dickinson, Wright, et al., Detroit, MI, for Defendants.

## OPINION AND ORDER

FEIKENS, District Judge.

### I. BACKGROUND

Plaintiff filed this suit alleging racial discrimination, gender discrimination, and a violation of an implied contract of employment in Wayne County Circuit Court. Defendants removed the case to this court pursuant to 28 U.S.C. §§ 1441 & 1446, based on diversity jurisdiction under 28 U.S.C. § 1332. The amount in controversy exceeds $75,000.00.

I heard oral argument on defendants' motion for summary judgment on December 12, 1997, and I granted summary judgment for defendants and dismissed the action with prejudice on December 23, 1997. Through new counsel, plaintiff Steven Bateman (Bateman) moves this court to vacate its decision and remand the matter to state court because of an alleged lack of federal jurisdiction. Bateman states that the diversity asserted by defendants never existed because defendant Charles Enzinger (Enzinger) was at all pertinent times a citizen of Michigan (not Delaware).

### II. ANALYSIS

#### A. When to hear jurisdiction issue.

■ The issue of a federal court's subject matter jurisdiction may be raised at any time, even after judgment.

Because [defendant-appellant] raised the issue of jurisdiction only after judgment had been entered in the district court, the question ... arises whether this court must address the issue at all. It appears that we must. The general practice among federal courts has been to permit any party to challenge (or for the court to question *sua sponte*) the existence of subject-matter jurisdiction at any time in the proceedings. The language of FED. R. CIV. P. 12(h)(3) suggests that courts have a positive duty to undertake the jurisdictional inquiry: "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court *shall* dismiss the action."

*Von Dunser v. Aronoff,* 915 F.2d 1071, 1074 (6th Cir.1990) (emphasis added by court in *Von Dunser*). Bateman claims that at all relevant times, Enzinger was a Michigan resident. If Bateman is correct, the parties did not have complete diversity, and I must vacate my ruling and remand the case to state court.

#### B. Determination of domicile.

■ A federal district court has jurisdiction over a diversity action if complete diversity of citizenship exists at the time the complaint is filed. *Napletana v. Hillsdale College,* 385 F.2d 871, 872 (6th Cir.1967). Citizenship for 28 U.S.C. § 1332 purposes "is synonymous not with 'residence' but with 'domicile.'" *Kaiser v. Loomis,* 391 F.2d 1007, 1009 (6th Cir.1968) (citations omitted). Citizenship "is determined as of the date of commencement of the action." *Id.* Bateman commenced this action in April, 1996. Defendants removed the action to this court in May, 1996.

■ A citizen can change his/her domicile instantly by taking up residence at a new domicile **with** the intent to remain there. *Napletana,* 385 F.2d at 872–73 (emphasis added). "[A] change in domicile requires only the concurrence of (1) physical presence at the new location with (2) an intention to remain there indefinitely, or the absence of any intention to go elsewhere." *Holmes v. Sopuch,* 639 F.2d 431, 433 (8th Cir.1981)

(citation omitted; emphasis added). Therefore, the questions in the instant case are whether Enzinger took up residence in Michigan—through physical presence in Michigan—and whether Enzinger intended to remain in Michigan indefinitely, **or** at least had no present intention of residing elsewhere.

The United States District Court for the Southern District of New York discussed determination of domicile for diversity jurisdiction in *Chappelle v. Beacon Communications Corp.*, 863 F.Supp. 179 (S.D.N.Y.1994). The court in *Chappelle* stated that "[e]ven though a party may have several places of residence, he or she may have only one domicile at a given time." *Id.* at 181 (citing *Williamson v. Osenton*, 232 U.S. 619, 625, 34 S.Ct. 442, 443, 58 L.Ed. 758 (1914)). A domicile is distinguished from a residence by the "permanency and scope" of a party's presence at either location. "It is 'the place where a person dwells and which is the **center of his domestic, social, and civil life.**'" *Id.* at 181 (citations omitted; emphasis added). The court in *Chappelle* agreed that domicile requires physical presence with a present intent to remain in the state indefinitely. *Id.*

■ Enzinger claims that he had two residences, Michigan and Delaware, but that the Delaware residence was his domicile—even though he lived and worked in Michigan during the relevant time period. (By report of his attorneys, Enzinger is now in Bonn, Germany, on assignment.) To determine which residence was Enzinger's domicile during the relevant time period, I must focus on Enzinger's intent, and examine the entire course of Enzinger's conduct at all relevant times, to make necessary inferences about the totality of the evidence. *Id.* Items to examine include, but are not limited to, the place where civil and political rights are exercised, taxes paid, real and personal property located, driver's and other licenses obtained, bank accounts maintained, location of club and church membership and places of business or employment, whether the party rents or owns his residence, how permanent the living arrangement *appears,* affiliations with social organizations, locations of the party's physician, lawyer, accountant, dentist, stockbroker,

**and other service providers.** *Id.* (emphasis added).

■ In his deposition, Enzinger admits that he (1) resided in Michigan during all relevant times (he resided in Michigan for 3 years, from 3/94 thru 4/97) (removal of the case to this court occurred on 5/22/96); (2) resided in Rochester Hills, Michigan, with his wife and two children, in a house and on property he and his wife owned; (3) does not own property in Delaware; (4) paid Michigan income tax during his residence; (5) did not pay Delaware income tax during his residence; (6) had a Michigan driver's license during his residence; (7) has blood relatives in Michigan; and (8) does not have blood relatives in Delaware.

Enzinger states that he received paychecks from Delaware. However, all DuPont employees receive their checks from the Delaware office, irrespective of their domiciles. Enzinger claims he has a Delaware driver's license. He attempts to mislead this court. Although he now has a Delaware driver's license, the photocopy of that license provided as an exhibit to his pleadings shows that the license was issued on June 19, 1997, indicating that **he did not obtain the Delaware driver's license until he moved out of Michigan,** after the relevant time period.

Although Enzinger states that under his company's direction he always intended to move out of Michigan after the three-year time period, that does not alter the result of this analysis. The correct assessment is that *during his three years of residence in Michigan (the only time period relevant to this action),* Enzinger had both the intent to remain in Michigan, and no intent to go elsewhere. In Enzinger's answers to interrogatories, he admits that in the past 24 years he resided in the following states during the listed time periods:

| | | |
|---|---|---|
| OH | 1974–78 | 5yrs. |
| DE | 1978–80 | 2yrs. |
| CA | 1980–82 | 2yrs. |
| DE | 1982–85 | 3yrs. |
| NC | 1985–91 | 6yrs. |
| DE | 1991–94 | 3yrs. |
| MI | 1994–97 | 3yrs. |

Enzinger's longest uninterrupted stays· in one state are not in Delaware, they are in Ohio and North Carolina.

In a supplemental response to Bateman's motion to vacate and remand; Enzinger provides evidence of his 1994–97 lease of a Delaware apartment. This does not negate the fact that Enzinger and his wife owned a house in Michigan, and resided in that house with their children during the relevant time period.

## CONCLUSION

The weight of the evidence presented by the parties indicates that despite Enzinger's arguments to the contrary, he was a **Michigan domiciliary** at all times relevant to this action. Enzinger did not provide any evidence of an intention not to remain in Michigan "for at least the time being" while he was in Michigan. That his company intended his stay to be limited to three years does not alter my conclusion that **for those three years** Enzinger took on the mantle and manner of a Michigan domiciliary under the *Chappelle* analysis. Therefore, for the reasons discussed herein, I hold that Enzinger was a Michigan resident and·was domiciled in Michigan during all times relevant to this action; that the parties, therefore, lacked complete diversity at the time this suit commenced; and that consequently, I must vacate my order granting summary judgment for defendants and remand this matter to state court.

**IT IS SO ORDERED.**