NORTH CAROLINA INSURANCE GUARANTY ASSOCIATION, Plaintiff v. JELINDA BURNETTE, by her Guardian Ad Litem, REBECCA LIPTOW, and REBECCA LIPTOW, Individually, and CATAWBA COUNTY BOARD OF EDUCATION, Defendants

No. COA98-145

(Filed 29 December 1998)

1. Insurance— insolvent insurer—two policies with same insured—Guaranty Association—extent of obligation

The trial court did not err in a declaratory judgment action arising from an automobile accident in which the insurer became insolvent by finding that the obligation of the North Carolina Insurance Guaranty Association was limited to $300,000 with a set-off where the insolvent insurer had issued a primary and an excess policy to the insured. N.C.G.S. § 58-48-35 limits the Association's exposure to $300,000 subject to set-off for a single covered claim (the underlying injury) even though the insolvent insurer provided primary and excess coverage under separate policies.

2. Immunity— governmental—waiver—school board—insolvent insurer—primary and excess coverage with same insurer—limit of indemnity

The trial court correctly found that a school board had waived governmental immunity to the extent of $300,000 prior to set-off where a complaint was filed against the Board arising from an accident at a school bus stop, the Board was insured by primary and excess policies with the same insurer, that insurer became insolvent, and the North Carolina Insurance Guaranty Association filed this declaratory judgment action to determine its obligation. A local board of education waives its immunity only to the extent it is indemnified by insurance and the Association's responsibility to the Board is limited to $300,000 prior to set-off by statute. The fact that the Board had two policies with the insolvent insurer does not negate the holding that

the waiver is effectual only to the amount that the Board is indemnified.

Appeal by defendants Jelinda Burnette, by her Guardian Ad Litem Rebecca Liptow, and Rebecca Liptow, individually from judgment entered 25 September 1997 by Judge Forrest A. Ferrell in Catawba County Superior Court. Heard in the Court of Appeals 6 October 1998.

*Moore & Van Allen, by Joseph W. Eason and Christopher J. Blake, for plaintiff-appellee.*

*Price, Smith, Hargett, Petho & Anderson, P.A., by William Benjamin Smith, for defendant-appellants Jelinda Burnette, by her Guardian Ad Litem, Rebecca Liptow, and Rebecca Liptow, individually.*

*Golding, Meekins, Holden, Cosper & Stiles, L.L.P., by Terry D. Horne, for defendant-appellee Catawba County Board of Education.*

WALKER, Judge.

The North Carolina Insurance Guaranty Association (Association) is a non-profit unincorporated legal entity established pursuant to the Insurance Guaranty Association Act, N.C. Gen. Stat. § 58-48-1, *et seq.* (the Act). Its purpose is to provide payment of covered claims under certain insurance policies when the insurer has become insolvent. As plaintiff, it filed this action seeking a declaratory judgment as to its responsibilities in an underlying negligence action brought by defendants Jelinda Burnette (Burnette) by her Guardian Ad Litem Rebecca Liptow, and Rebecca Liptow, individually, against defendant Catawba County Board of Education (Board).

The underlying dispute arises out of an automobile accident that occurred on 1 February 1994. At the time, Burnette was a five-year-old student in the school system operated by the Board. While walking toward a school bus stop where she expected to be picked up by one of the Board's school buses, she was struck and injured by a vehicle operated by Cheryl Bradshaw. Burnette filed a complaint against Bradshaw and the Board alleging that the Board was negligent by: (a) instituting school bus procedures which failed to provide for the safe pick-up of children; (b) changing the Board's school bus procedure without notifying Burnette and Liptow or other children creating

a hazard; (c) negligently designing and implementing school bus procedures; (d) failing to safeguard Burnette and other children during the Board's school bus pick-up procedure; and (e) failing to investigate the safety of the Board's school bus pick-up procedure before implementation.

At the time of the accident, the Board was insured by two liability policies issued by United Community Insurance Company (UCIC), a New York-based insurance company. The primary policy had a coverage limit of $1,000,000 and the excess policy had a coverage limit of $5,000,000. On 7 July 1994, UCIC was placed into rehabilitation by a New York court and was subsequently placed into liquidation on 9 November 1995. On 31 May 1995, UCIC was declared insolvent and placed into liquidation in North Carolina by order of the Wake County Superior Court.

After UCIC was placed into liquidation, the Association began to fulfill its statutory obligations to the insureds of UCIC, including the Board. The Association filed this action seeking a declaratory judgment that the allegations made by Burnette in the underlying action would not constitute "covered claims" under the Act and that, if they did, the Association's obligation was limited to an amount, prior to set-off, not to exceed $300,000 under the primary policy issued to the Board by UCIC. Burnette answered asking for a declaratory judgment that the Association is obligated to provide coverage to the extent of $600,000. The Board answered and cross-claimed against Burnette seeking a declaration of whether Burnette had a "covered claim" and if not, to find that the Board had not waived its governmental immunity with regard to their claims. Thereafter, the Board and the Association filed motions for summary judgment and Burnette moved for judgment on the pleadings.

The trial court found "that there is no issue of material fact with regard to the allegation of negligence contained in paragraph 10c [negligent design and implementation of school bus procedures] and the Plaintiff [the Association] is therefore entitled to Summary Judgment on this issue." However, the trial court found that "[w]ith regard to the allegations of negligence in paragraph 10a. b. d. e. [sic] there are genuine material issues of fact and the Plaintiff is not entitled to Summary Judgment as a matter of law as to those acts of negligence." The trial court also found that the Association was obligated to provide coverage to the extent of $300,000 and was entitled to a set-off against the recovery of up to $25,000 of the insurance provided

to Cheryl Bradshaw in the underlying tort action if that amount were recovered. Further, the trial court found that the Board had waived its governmental immunity to the same extent.

It is clear from this record that the trial court made no determination whether defendant Burnette's claims of negligence contained in paragraphs 10 a, b, d, and e constituted "covered claims" under the UCIC policy and the Act as requested by the Association. Indeed, the trial court found that "genuine material issues of fact" existed and that summary judgment was not proper. Thus, this order leaves issues to be determined by the trial court and is not final. *See Veazey v. City of Durham,* 231 N.C. 357, 57 S.E.2d 377 (1950). Because further action is required by the trial court to make it a final judgment, it is interlocutory. *N.C. Dept. of Transportation v. Page,* 119 N.C. App. 730, 460 S.E.2d 332 (1995).

Interlocutory orders are "ordinarily not directly appealable." *Liggett Group v. Sunas,* 113 N.C. App. 19, 437 S.E.2d 674 (1993). There are two means by which an interlocutory order or judgment may be immediately appealed: (1) if the order is final as to some but not all of the claims or parties and the trial court certifies there is no just reason to delay the appeal pursuant to N.C.R. Civ. P. 54(b) and (2) "if the trial court's decision deprives the appellant of a substantial right which would be lost absent immediate review." *Bartlett v. Jacobs,* 124 N.C. App. 521, 477 S.E.2d 693 (1996), *disc. review denied,* 345 N.C. 340, 483 S.E.2d 161 (1997) (citations omitted). Here, the trial court made no Rule 54(b) certification and plaintiff has not shown nor can we discern any substantial right that would be lost absent immediate review.

Thus, this appeal should be dismissed; however, in the exercise of our discretion, we elect to decide the issue presented in defendant Burnette's assignments of error. N.C.R. App. P. 2.

[1] Burnette assigns as error the trial court's finding that the Association's obligation to provide coverage was limited to $300,000 in all events with a set-off of any amount up to $25,000 in liability insurance paid on behalf of Cheryl Bradshaw. She also assigns as error the trial court's ruling that the Board has waived governmental immunity to the same extent. Burnette argues that because the Board had two policies with UCIC, a primary and an excess, the Association should be required to provide up to $300,000 of coverage under each policy for a total of up to $600,000.

The Association's duties are established in N.C. Gen. Stat. § 58-48-35 which provides in part:

(a) The Association shall:

(1) Be obligated to the extent of the covered claims existing prior to the determination of insolvency and arising within 30 days after the determination of insolvency, or before the policy expiration date if less than 30 days after the determination, or before the insured replaces the policy or causes its cancellation, if he does so within 30 days of the determination. This obligation includes only the amount of each covered claim that is in excess of fifty dollars ($50.00) and is less than three hundred thousand dollars ($300,000). . . . The Association has no obligation to pay a claimant's covered claim, except a claimant's workers' compensation claim, if:

> a. The insured had primary coverage at the time of the loss with a solvent insurer equal to or in excess of three hundred thousand dollars ($300,000) and applicable to the claimant's loss; or
>
> b. The insured's coverage is written subject to a self-insured retention equal to or in excess of three hundred thousand dollars ($300,000).

If the primary coverage or the self-insured retention is less than three hundred thousand dollars ($300,000), the Association's obligation to the claimant is reduced by the coverage and the retention. . . . In no event shall the Association be obligated to a policyholder or claimant in an amount in excess of the obligation of the insolvent insurer under the policy from which the claim arises.

N.C. Gen. Stat. § 58-48-35(a)(1) (1994).

In 1989, N.C. Gen. Stat. § 58-48-35 was amended to include a limitation on the exposure of the Association for a single covered claim. *See* 1989 N.C. Sess. Laws ch. 206, § 3. The amendment provides that the Association has no obligation if the insured had other primary coverage with a solvent insurer or a self-insured retention, either of which is equal to or in excess of $300,000 and applicable to the claimant's loss. N.C. Gen. Stat. § 58-48-35 (1994). In any event, the purpose of this provision is to limit the Association's exposure to $300,000 for a single covered claim. The statute already limited the Association's exposure to $300,000 for a covered claim, and this

amendment limits the amount a claimant can receive from the Association where other primary coverage applies. If other applicable primary coverage exists, the Association is obligated only for the difference between that coverage and $300,000. If more than $300,000 of primary coverage is available, then the Association has no obligation.

Here, we construe the statute to limit the Association's exposure to $300,000, subject to set-off, for a single covered claim (Burnette's injury). Even though the insolvent insurer provided the primary and excess coverage under separate policies, the Association is only obligated to provide $300,000 of coverage less the set-off.

[2] For the same reasons, defendant Burnette argues that the trial court erred in finding that the Board's governmental immunity was waived to the extent of $300,000 prior to set-off. A local board of education waives its immunity only to the extent it is "indemnified by insurance for such negligence or tort." N.C. Gen. Stat. § 115C-42 (1997). This Court has held that a waiver of governmental immunity ceases at the point where indemnification ends. *McDonald v. Village of Pinehurst*, 91 N.C. App. 633, 372 S.E.2d 733 (1988). In *McDonald*, an insurer had become insolvent and the Association had taken over its responsibilities. The city argued that because its insurer had become insolvent its waiver of immunity was ineffectual. This Court disagreed and held that because the Association's responsibility arose out of the insurance contract between the city and the insurer, the waiver was still effective up to the amount of coverage provided by the Association. *Id.*

Here, the fact that the Board had two policies with the insolvent insurer does not negate the holding that the waiver is effectual only to the amount that the Board is indemnified. Because the Association's responsibility to the Board is limited to $300,000 prior to set-off by statute, the Board's waiver is limited to the same extent. Further, neither party argues that the Board has waived its immunity beyond $300,000 less set-off provided by the Association. For the foregoing reasons, defendant Burnette's assignments of error are overruled and the order of the trial court is affirmed.

The Association and defendant Board cross-assign as error the trial court's denial in part of their motions for summary judgment. As this portion of the declaratory judgment was not finally determined by the trial court which found that "genuine material issues of fact" existed, we remand for further proceedings on the issue of whether a "covered claim" exists under the Act.

Affirmed in part and remanded.

Judges GREENE and SMITH concur.