JOURNAL ENTRY AND OPINION
Defendant-appellant, Ohio Insurance Guaranty Association (OIGA), appeals the decision of the Cuyahoga County Common Pleas Court that found plaintiff-appellee, Regina Rushdan (Rushdan) entitled to recover an additional $300,000 from OIGA under an excess or umbrella policy of insurance issued to defendant, David Baringer, M.D. (Baringer) after Baringer's professional liability insurer became insolvent. For the reasons that follow, we affirm.
A review of the record reveals that Rushdan filed an action for medical malpractice against Baringer in January 1997. At the time of the suit, Baringer was insured by Physicians Insurance Exchange Mutual Insurance Company (PIE), which provided coverage in the amounts of $1,000,000 per claim/$3,000,000 in the aggregate under a primary policy of insurance and $1,000,000 under an excess policy. In 1998, PIE was declared insolvent and ordered into liquidation by the Franklin County Common Pleas Court. Under the Ohio Insurance Guaranty Act (the Act), codified at R.C. Chapter 3955, OIGA assumed the defense of the claims against PIE insureds such as Baringer.
In August 1999, a partial settlement agreement was reached between OIGA and Rushdan wherein it was stipulated that the value of Rushdan's claims against Baringer totaled $1,300,000.00. Rushdan thereafter agreed to accept OIGA's offer of $300,000, its statutory limit according to R.C.3955.01(D)(2)(b), plus a Class 2 claim in the amount of $1,000,000.00.[1]
Rushdan, nonetheless, continued to maintain that she had a second covered claim under Baringer's excess policy and was therefore entitled to an additional payment of $300,000 from OIGA. As a result, Rushdan contemporaneously amended her complaint to include OIGA as a newparty defendant and added a claim for declaratory relief seeking a declaration to that effect.
Rushdan and OIGA filed cross-motions for summary judgment. In its opinion granting Rushdan's motion and denying OIGA's, the trial court concluded that Rushdan did indeed have two covered claims based not only on the language of the policies at issue but the very nature and purpose of excess insurance.
 It cannot be doubted that but for the P.I.E. insolvency, [Rushdan] would have pursued two claims, one against Dr. Baringer's Primary Policy and one against the Excess Policy. Or, looking from P.I.E.'s perspective, the $1.3 million settlement would have been paid pursuant to both of Dr. Baringer's policies, the Primary up to $1 million, and the Excess for the remaining $300,000. If two claims would have existed but for P.I.E.'s insolvency, two covered claims exist pursuant to the Act. Therefore, [Rushdan] is entitled to a second $300,000 payment from OIGA.
In finding as such, the court dismissed OIGA's argument that Rushdan is not entitled to recover under the excess policy because she only received $300,000 and not the $1 million limit under the primary policy.
 While OIGA's arguments may appear logical on their face, they fail because they ignore the statutory requirement that the OIGA assume all obligations of the insurer, to the extent of covered claims, as if the insurer had not become insolvent. R.C. 3955.08(A)(2). The fallacy of OIGA's position lies in the fact that the OIGA is seeking to construe the provisions of the Excess Policy in light of P.I.E.'s insolvency. This it cannot do. The OIGA must assume all of the obligations created under the provisions of the Excess Policy, to the extent of their status as covered claims, as if P.I.E. had not become insolvent. In other words, the OIGA must meet P.I.E.'s obligations under the Excess Policy as if the full limits of the Primary Policy had been available for payment. OIGA's attempt to use P.I.E. insolvency to shield its obligations under the Excess Policy is not permissible under the Act. Indeed, OIGA has already acknowledged that the full [$]1.3 million settlement value would have been payable by P.I.E. but for its insolvency.
 Thus, OIGA is obligated under the terms of the Excess Policy as if [Rushdan] had been paid the full $1 million under the Primary Policy. (Emphasis sic.)
OIGA is now before this court and assigns two errors for our review. While not assigning the errors as such, OIGA in effect, challenges the trial court's decision to grant summary judgment to Rushdan on the basis that (1) Rushdan has two separate covered claims; and (2) the excess policy was triggered when OIGA paid the full amount to which it was statutorily obligated under the primary policy even though that amount was less than the limit in that policy had the insurer not been insolvent.
In reviewing a motion for summary judgment, an appellate court conducts a de novo review of the trial court's decision. A court reviewing the granting of a summary judgment must follow the standards set forth in Civ.R. 56(C) * * *. Aglinsky v. Cleveland Builders Supply Co. (1990),68 Ohio App.3d 810, 814. Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from such evidence that reasonable minds can come to but one conclusion and, reviewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to the party. Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
 I.
As to OIGA's first assignment of error, it contends that the trial court erred in finding that Rushdan had two separate covered claims, one under each policy, and therefore entitled to recover an additional $300,000 from OIGA. It maintains that the intent of the Act was never to serve as replacement insurance, but rather to guard against catastrophic losses. According to OIGA, interpreting the meaning of covered claim as does the trial court would thwart the meaning of the Act and, in turn, deplete the guaranty fund.
The Ohio Insurance Guaranty Association Act, codified at R.C. Chapter 3955, was enacted to protect insureds and third-party claimants from potentially catastrophic losses due to the insolvency of a member insurer. PIE Mut. Ins. Co. v. Ohio Ins. Guar. Assn. (1993),66 Ohio St.3d 209, at paragraph one of the syllabus. OIGA, a nonprofit unincorporated association, was thereafter created as a mechanism to accomplish the Act's objectives.
 The purposes of sections 3955.01 to 3955.19 of the Revised Code are to provide a mechanism for the payment of covered claims under certain insurance policies, avoid excessive delay in payment and reduce financial loss to claimants or policyholders because of the insolvency of an insurer, assist in the detection and prevention of insurer insolvencies, and provide an association to assess the cost of such protection among insurers.
R.C. 3955.03. To this end, OIGA assumes the place of the insolvent insurance carrier for liability purposes only and provides insurance coverage when no other insurance is available to compensate valid claims. Id.; see, also, Lake Hosp. Sys., Inc. v. Ohio Ins. Guar. Assn. (1994), 69 Ohio St.3d 521, 523.
As a creature of statute, OIGA is restricted by its very terms to pay only covered claims. R.C. 3955.01(D)(1) defines a covered claim as follows:
 Covered claim means an unpaid claim, * * * which arises out of and is within the coverage of an insurance policy to which sections 3955.01 to 3955.19
of the Revised Code apply, when issued by an insurer which becomes an insolvent insurer * * *.
Rushdan contends that the language an insurance policy in the definition of covered claim intimates that there may be one claim under the primary policy and one claim under the excess policy. We agree.
In cases involving statutory construction, it is the duty of the court to give effect to the words used, not to delete words used or to insert words not used. Erb v. Erb (2001), 91 Ohio St.3d 503, 507 citing Cleveland Elec. Illuminating Co. v. Cleveland (1988), 37 Ohio St.3d 50, paragraph three of the syllabus. If the meaning of the statute is unambiguous and definite, it must be applied as written and no further interpretation is necessary. State ex rel. Savarese v. Buckeye Local School Dist. Bd. of Edn. (1996), 74 Ohio St.3d 543, 545. Where the words of the statute are ambiguous, however, the court must construe the language in a manner that reflects the intent of the General Assembly. Clark v. Scarpelli(2001), 91 Ohio St.3d 271, 274 citing Cochrel v. Robinson (1925), 113 Ohio St. 526, paragraph four of the syllabus.
We find no ambiguity in the statute. By limiting a covered claim to one that arises under an insurance policy it appears clear to this court that the General Assembly intended coverage under one policy of insurance. Consequently, if the insured had coverage under more than one policy and had that coverage been triggered under the terms of those policies so as to compensate the injured plaintiff according to the terms of a judgment or settlement, then it follows that that same plaintiff has a covered claim under each policy. Had the General Assembly intended to limit coverage to one set of circumstances or one particular event it could have done so. This it did not do and we are without authority to add words to the statute that are not there nor delete words that are.
OIGA urges this court to follow Havens Steel Co. v. Missouri Property and Cas. Ins. Guar. Assn. (Mo. 1997), 956 S.W.2d 906 and North Carolina Ins. Guar. Assn. v. Burnette (1998), 131 N.C. App. 840, 508 S.E.2d 837
wherein these state courts found one single covered claim despite the insureds having purchased both a primary and an excess policy from insolvent insurers.[2] We are unpersuaded.
First, these cases are distinguishable on their facts. While each case involves an insured who purchased both a primary and excess policy from an insurer who subsequently became insolvent, there is nothing in the facts of these cases that support that coverage would have been triggered but for the insolvency of the primary insurer.
In Havens Steel, for example, the insured obtained a primary policy with limits of $1 million and an excess policy with limits of $4 million. The insured sought reimbursement in the amount of $515,000 from the Missouri Insurance Guaranty Association (MIGA), the amount of money that represented the insured's liability in a particular action. Because this amount was less than the insured's limit under its primary policy, coverage under the excess policy would never have been available had the primary insurer not become insolvent. Excess insurance does not generally drop down unless the contract of insurance provides as much. See Wurth v. Ideal Mut. Ins. Co. (1987), 34 Ohio App.3d 325, 328; see, also, Alvey v. Missouri Ins. Guaranty Assn. (Mo.App. 1996), 922 S.W.2d 804, 810.
In Burnette, there was no value attributed to the third-party's claim against the insured, which differs from this case where the parties agreed that Rushdan's claims had a reasonable settlement value of $1.3 million. As the facts of these cases are distinguishable, we see no reason to follow the reasoning of these courts, however limited that reasoning may be.
We look next to the language of the respective policies. Insurance contracts must be construed in accordance with the same rules of construction as other written contracts. See Hybud Equip. Corp. v. Sphere Drake Ins. Co. (1992), 64 Ohio St.3d 657, 665. As such, if the language of the policy is clear and unambiguous, the words and phrases used therein must be given their natural and commonly accepted meaning consistent with the intent of the parties. See Tomlinson v. Skolnik (1989), 44 Ohio St.3d 11, 12. On the contrary, any ambiguity in the contract language must be strictly construed against the insurer and liberally in favor of the insured. See, generally, Clark v. Scarpelli,91 Ohio St.3d at 282.
The primary policy issued to Baringer in this case is a claims-made policy and limits PIE's liability for all damages because of any one claim or suit or all claims or suits first made during the policy period because of injury to or death of any one person * * *. Under the excess policy, PIE agreed to indemnify Baringer.
 [PIE] agrees to indemnify [Baringer], in accordance with the applicable provisions of the Underlying Insurance for the amount of Loss which is in excess of the applicable limits of the Underlying Insurance described in the Declarations.
Loss is defined the same under both policies as the sums paid as damages in settlement of a claim * * *. The policies define a claim as notification to an Insured * * * by means of a civil proceeding alleging injury to which this Policy coverage applies * * *. Coverage is defined as the protection afforded the Insured under the terms and conditions of this Policy.
It is undisputed that Rushdan has a covered claim under the primary policy and therefore is entitled to coverage based on the parties' stipulated reasonable settlement value of $1.3 million. What is disputed is whether there exists a covered claim under the excess policy. We conclude that Rushdan does have a covered claim under that policy. But for its insolvency, PIE would have paid $1 million under the primary policy and a claim under the excess policy would have been made for the remaining $300,000.00. Had the reasonable settlement value been less than $1 million, coverage under the excess policy would never have been available. Nor could the excess policy serve to drop down to provide coverage if the reasonable settlement value had been more than $300,000 but less that $1 million. See Wurth v. Ideal Mut. Ins. Co.,34 Ohio App.3d at 328. In such a case, OIGA's liability would have been statutorily limited to $300,000.00.
But that is not the case here. Because the parties stipulated that the reasonable settlement value exceeded the limit under the primary policy, a covered claim arose under the excess policy to which OIGA must provide coverage. Consequently, there is no genuine issue precluding judgment in Rushdan's favor as a matter of law.
Appellant's first assignment of error is not well taken and is overruled.
 II.
As to OIGA's second assignment of error, it contends that even if the statute can be interpreted so as to find that Rushdan has a second covered claim, there is no coverage under the excess policy because the $1 million limit has yet to be paid under the primary policy. OIGA directs us to the sums paid language in the definition of loss to justify its argument.[3] In particular, it claims that only $300,000 was paid, which is less than the $1 million primary policy limit.
OIGA relies on Wurth v. Ideal Mut. Ins. Co., 34 Ohio App.3d 325 for the proposition that it is only liable for the same claims as the insolvent insurer would have been. We have no disagreement with that statement. In this case, PIE was found liable for $1.3 million. But for its insolvency, PIE would have paid that sum; the first million under the primary policy and the remaining $300,000 under the excess policy. By statute, OIGA assumes the obligations of the insolvent insurer to provide coverage for a covered claim. Merely because OIGA is monetarily limited by statute as to the amount it will pay on a covered claim should not render meaningless the fact that, but for PIE's insolvency, the latter would have been paid the sum of $1 million under the primary policy thereby invoking coverage under the excess policy.
We therefore agree with the trial court that OIGA cannot use PIE's insolvency to shield its obligation to pay a covered claim under the excess policy. Consequently, we are unpersuaded that the sums paid language defining loss under the excess policy precludes OIGA's liability to provide coverage. It was therefore not error for the trial court to find that Rushdan was entitled to judgment in her favor as a matter of law.
OIGA's second assignment of error is not well taken and is overruled.
It is ordered that appellee recover of appellant Ohio Insurance Guaranty Association costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE, J. and FRANK D. CELEBREZZE, JR., J., CONCUR.
[1] The unpaid portion of the reasonable settlement value remains an obligation of PIE and, in turn, OIGA, who has agreed that the unpaid amount will be fully allowed as a Class 2 claim. A Class 2 claim is subject to a pro rata distribution, if one is made, as are all other claims in this class.
[2] Appellant also relies on Alvey v. Missouri Ins. Guaranty Assn. (Mo.App. 1996), 922 S.W.2d 804, a case from a Missouri appellate court released prior to the New Havens case. While it was cited by the New Havens court as to the purpose of Missouri's guaranty act, it was not otherwise relied upon. Nonetheless, it is similarly distinguishable from the instant case.
[3] Reiterating, loss is defined as the sums paid as damages in settlement of a claim * * *.