**VICKERS, Admr., Appellant,**

v.

**HOWE, Appellee.**

[Cite as *Vickers v. Howe* (1998), 123 Ohio App.3d 456.]

Court of Appeals of Ohio,
Fifth District, Morgan County.

No. 96CA07.

Decided April 24, 1998.

*Scanlon & Gearinger Co., L.P.A.,* and *Patrick J. Hart; Magaziner, Hooper, McGlade & Hillis* and *Blair L. Magaziner,* for appellant.

*Robert H. Willard,* for appellee.

·WISE, Judge.

Appellant Karen Vickers, as the administrator of the estate of her deceased husband James Vickers, brought this action against Dr. Richard Walters and appellee Dr. Steven Howe, alleging that these doctors negligently caused the death of her husband.

In the fall of 1995, appellant settled with Dr. Peggy Jane Anderson, prior to the filing of the above lawsuit against Drs. Walters and Howe, for an undisclosed sum of money, which did not exhaust her policy limits of $100,000. Several days prior to the commencement of the scheduled trial in this matter, appellant settled with Dr. Walters. The settlement amount was $100,000, significantly less than his policy limits. of $1.4 million.

Appellee was insured by Professional Medical Insurance Company ("Professional Medical") with liability limits of $1.4 million. Professional Medical became insolvent and the Ohio Insurance Guaranty Association ("OIGA") stepped in to provide appellee with a defense pursuant to R.C. Chapter 3955. Throughout its representation of appellee, OIGA maintained that pursuant to R.C. 3955.13(A), appellant would have to exhaust the other insurance coverage available to her through the policies issued by Drs. Anderson and Walters before appellee would be required to respond in damages.

On September 9, 1996, the day of trial, appellee moved to dismiss appellant's claims, pursuant to R.C. 3955.13(A). The trial court granted appellee's motion. Appellant timely filed her notice of appeal and sets forth the following assignments of error for our consideration:

"I. The trial court erred when it dismissed the claim against the defendant based on the fact that the OIGA's interpretation of R.C. 3955 is against the law, disfavors public policy encouraging settlement, distorts the purpose of contribution among joint and several obligors, and contravenes the purpose of the statute.

"II. The trial court erred when it dismissed the claim against Dr. Howe without allowing the jury to determine issues of negligence and liability, improperly relieving Dr. Howe of any potential personal liability."

I

Under appellant's first assignment of error, we are asked to interpret the applicability of R.C. 3955.13(A) to a fact situation involving claims against

multiple tortfeasors, an issue not yet addressed by any courts in the state of Ohio. When construing a statute, our paramount concern is the statute's legislative intent. *State ex rel. Cincinnati Post v. Cincinnati* (1996), 76 Ohio St.3d 540, 543, 668 N.E.2d 903, 905–906, citing *State v. S.R.* (1992), 63 Ohio St.3d 590, 594, 589 N.E.2d 1319, 1322–1323. Thus, when a statute is susceptible of more than one interpretation, we must interpret the statutory provision in a manner that most readily furthers the legislative purpose as reflected in the wording used in the legislation. *State ex rel. Toledo Edison Co. v. Clyde* (1996), 76 Ohio St.3d 508, 513, 668 N.E.2d 498, 504, citing *United Tel. Co. v. Limbach* (1994), 71 Ohio St.3d 369, 372, 643 N.E.2d 1129, 1130–1131; *Harris v. Van Hoose* (1990), 49 Ohio St.3d 24, 26, 550 N.E.2d 461, 462–463.

In determining the General Assembly's intent, we must look at several factors set forth in R.C. 1.49:

"(A) The object sought to be attained;

"(B) The circumstances under which the statute was enacted;

"(C) The legislative history;

"(D) The common law or former statutory provisions, including laws upon the same or similar subjects;

"(E) The consequences of a particular construction;

"(F) The administrative construction of the statute."

R.C. 3955.13(A), the statute at issue, provides as follows:

"Any person having a covered claim upon which recovery is also presently possible under an insurance policy written by another insurer shall be required first to exhaust his rights under such other policy."

In *PIE Mut. Ins. Co. v. Ohio Ins. Guar. Assn.* (1993), 66 Ohio St.3d 209, 611 N.E.2d 313, paragraph one of the syllabus, the Ohio Supreme Court stated:

"The Ohio Insurance Guaranty Association Act, R.C. Chapter 3955, was designed to protect insureds and third-party claimants from a potentially catastrophic loss due to the insolvency of a member insurer. To this end, OIGA assumes the place of the insolvent insurance carrier for liability purposes only and provides insurance coverage when no other insurance is available to compensate valid claims."

■ Appellant interprets the language of R.C. 3955.13(A) to mean that a single tortfeasor against whom a claim is presently possible and who has insurance coverage in addition to the coverage provided by the insolvent insurance company must exhaust that additional insurance before OIGA is responsible in damages. Appellee interprets the above statute to require a person having a covered claim

who also has a possible right of recovery under another insurance policy to exhaust the other insurance policies first before OIGA is responsible, even if those other insurance policies are maintained by several tortfeasors. We agree with appellee's interpretation of R.C. 3955.13(A) for the following reasons.

First, we do not find that the language of R.C. 3955.13(A) is to be interpreted as narrowly as proposed by appellant. The first phrase of the statute is "[a]ny person having a covered claim * * *." R.C. 3955.01(D)(1) defines a "covered claim" as:

"(D)(1) * * * an unpaid claim, including one for unearned premiums, which arises out of and is within the coverage of an insurance policy to which sections 3955.01 to 3955.19 of the Revised Code apply, when issued by an insurer which becomes an insolvent insurer on or after September 4, 1970, and either of the following applies:

"(a) The claimant or insured is a resident of this state at the time of the insured event, provided that for the purpose of determining the place of residence of a claimant or insured that is an entity other than a natural person, the state in which its principal place of business is located at the time of the insured event shall be considered the residence of such claimant or insured.

"(b) The claim is a first-party claim for property damage to an insured's property that is permanently located in this state."

There is no dispute that appellant's claim against Dr. Howe is a "covered claim" within the definition of R.C. 3955.01(D)(1). The next phrase of R.C. 3955.13(A) that we must analyze is "upon which recovery is also presently possible under an insurance policy written by another insurer." We find that the phrase "another insurer" is not limited to other solvent insurers of that particular tortfeasor whose insurer is insolvent. That is, appellant is required to exhaust all rights of recovery against not only a solvent company that may also be insuring appellee, but all solvent companies that are insuring all three tortfeasors in this action. Finally, the last phrase of R.C. 3955.13(A) is "shall be required first to exhaust his rights under such other policy." The use of the word "shall" makes exhaustion mandatory.

There are two opinions from Ohio courts that do give some insight regarding the interpretation of R.C. 3955.13(A). The first is *Toms v. Waters* (Mar. 31, 1993), Erie App. No. E–92–19, unreported, 1993 WL 170973. In *Toms* the defendant's insurance company became insolvent. The court of appeals held that plaintiff was required to exhaust other insurance coverage available to him, specifically his own uninsured motorists coverage, before OIGA was required to respond in damages. *Id.* at 2. We find the reasoning in *Toms* persuasive since the court of appeals found that the exhaustion requirement of R.C. 3955.13(A)

applied not only to other insurers of the tortfeasor, but also to the plaintiff's own insurance policy.

The second opinion we find persuasive is *Wurth v. Ideal Mut. Ins. Co.* (1987), 34 Ohio App.3d 325, 518 N.E.2d 607. The court of appeals held in this decision that the OIGA is liable only after all other applicable insurance is exhausted because other available insurance may completely compensate the plaintiffs for their loss despite Ideal Mutual's insolvency. *Id.* at 331, 518 N.E.2d at 612–613.

A split of authority exists in other jurisdictions that have addressed this issue. However, we find persuasive *Aetna Cas. & Sur. v. Ohio Ins. Guar. Assoc.* (1991), 175 A.D.2d 621, 573 N.Y.S.2d 942. In that case, the Supreme Court of New York interpreted R.C. Chapter 3955 and found that R.C. 3955.13(A) requires exhaustion of all policies of insurance, including other tortfeasors. The court stated as follows:

"Moreover, OIGA's obligation to indemnify does not extend to any portion of the covered claim that is covered by other insurance * * *. The other insurance that Signs is required to exhaust includes not only the decedent's uninsured motorist coverage and other insurance held by Compass, but also policies of insurance covering other tort-feasors, including F & R's policy with Aetna and Huston's policy with Dairyland." *Id.* at 622, 573 N.Y.S.2d at 943.

Finally, in reviewing the legislative history of this act, we find the following statement regarding rights of claimants:

"Claimants against insolvent companies who also have a right to recover against a solvent company are required to first exhaust all rights of recovery against the solvent company. Any amounts payable under this bill shall be reduced by the amount of such recovery." Summary of 1970 Am.Sub.H.B. No. 1121, 133 Ohio Laws, Part III, 2937, codified at R.C. Chapter 3955, reprinted in Ohio Legislative Service Commission, Summary of 1970 Enactments (1970) 99.

Even the legislative history of the bill requires exhaustion of all rights of recovery against the solvent company before OIGA is responsible in damages. The mere fact that more than one company with solvent insurers may be involved does not alter the interpretation of the language contained in R.C. 3955.13(A). Clearly, had the General Assembly intended for a different result when more than one tortfeasor is involved, it could have addressed this issue in the statute. Absent such a provision, we find that exhaustion of all rights of recovery against a solvent insurance company is mandatory, even if more than one tortfeasor is involved, before OIGA is responsible in damages.

In support of our conclusion that a party must exhaust all potential insurance coverage before proceeding against the OIGA, we set forth the following rationale. The purpose behind the formation of the OIGA is to provide a degree of

protection to insureds and injured parties against insolvent insurance companies This purpose is specifically set forth in R.C. 3955.03 as follows:

"The purposes of sections 3955.01 and 3955.19 of the Revised Code are to provide a mechanism for the payment of covered claims under certain insurance policies, avoid excessive delay in payment and reduce financial loss to claimants or policy holders because of the insolvency of an insurer, assist in the detection and prevention of insurer insolvencies, and provide an association to assess the cost of such protection among insurers."

In order to accomplish this, the General Assembly created the OIGA. Under this statutory scheme, the General Assembly imposes upon those insurance companies who transact business in the state of Ohio and make a profit from the sale of insurance, whether it be auto, professional malpractice, or other forms of insurance, a duty to protect our citizens against insolvent insurance companies. The OIGA assesses every insurance company doing business in the state of Ohio and places these assessments into a state fund, which is administered by a board of directors selected pursuant to R.C. 3955.07.

Without the OIGA, an insured would be totally unprotected when he or she has a valid claim against an insolvent insurance company. The OIGA provides a level of protection up to $300,000, or the maximum level of coverage contained in the policy of the insolvent insurance company, whichever is less. Therefore, an individual may receive protection up to the $300,000 limit of coverage without fear of an insurer's insolvency. However, beyond that level, an insured has no further protection. Absent the OIGA, an injured party may be limited to the individual tortfeasor's personal assets, which may be far less than the protection afforded by the OIGA.

Appellant also makes several public policy arguments in support of her interpretation of R.C. 3955.13(A). First, appellant argues that the requirement that a plaintiff must exhaust all rights of recovery against the solvent companies of all the tortfeasors discourages settlement and contravenes the doctrine of joint and several liability under R.C. 2307.31(A). This is based upon the fact that it would make liability a function of the amount of total insurance a tortfeasor had as opposed to his relative fault.

Although we agree that such an interpretation of R.C. 3955.13(A) may discourage settlement, it protects the insured whose insurer is insolvent from personal liability, and to do otherwise could render the OIGA insurance fund financially infeasible. In exchange for this protection provided by the OIGA, the state of Ohio, to protect the assets of the OIGA insurance fund, requires an injured party to pursue and exhaust the limits of coverage of all other insurers who may be liable, before the injured party may collect under the OIGA insurance fund. By

requiring exhaustion, the injured party is denied nothing other than the ability to settle for less than the full amount of coverage of an alleged tortfeasor.

■ In the case *sub judice,* appellee had coverage in the amount of $1.4 million. However, when his insurer became insolvent, coverage was capped at $300,000. Appellee is therefore personally liable for any amount beyond $300,- 000. Pursuant to our interpretation of R.C. 3955.13(A), the insured is protected from personal liability by requiring the claimant to exhaust all other sources of coverage before OIGA becomes responsible for damages. Thus, such an approach protects both the claimant and insured whose insurer is insolvent.

If a plaintiff and the OIGA are unable to settle their claims, a trial is necessary, and the plaintiff does not eliminate the need for trial by settling with the other potential tortfeasors. Further, judicial economy is enhanced when all possible parties are joined and claims are litigated in one proceeding. This could also eliminate the need for subsequent contribution actions, as issues regarding a specific tortfeasor's percentage of liability would be determined in one proceeding.

Based upon the above reasons, we overrule appellant's first assignment of error.

## II

Appellant contends, in her second assignment of error, that the trial court erred when it dismissed the claim against appellee, without allowing the jury to determine issues of negligence and liability, improperly relieving appellee of any potential personal liability. We agree.

■ We will not disturb the trial court's imposition of dismissal unless the dismissal was an abuse of the trial court's discretion. *Loynd v. Scott Molders, Inc.* (1990), 62 Ohio App.3d 888, 891, 577 N.E.2d 736, 737–738. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482–483, 450 N.E.2d 1140, 1141–1142.

■ We find that the trial court's dismissal of appellant's cause of action against appellee was an abuse of discretion. Although appellee would not be liable for damages up to or including $300,000, as appellant failed to exhaust all rights of recovery against the solvent insurance companies of other tortfeasors, appellee would be personally liable for any judgment above $300,000.

However, pursuant to *Fidelholtz v. Peller* (1998), 81 Ohio St.3d 197, 690 N.E.2d 502, it would be premature for us to determine whether any judgment rendered

against appellee must be reduced by the amount appellant received from Drs. Anderson and Walters. Such determination requires additional information, *e.g.*, the specific injury(s) caused by each individual tortfeasor, the damages precipitated thereby, and an analysis of the settlement agreements. Further, findings of fact or jury interrogatories could affect this issue. Therefore, we refrain from determining any issue as to setoff at this juncture of the proceedings.

Appellant's second assignment of error is sustained.

For the foregoing reasons, the judgment of the Court of Common Pleas of Morgan County is hereby affirmed in part and reversed in part, and the cause is remanded.

*Judgment accordingly.*

FARMER, J., concurs.

WILLIAM B. HOFFMAN, P.J., concurs in part and dissents in part.

WILLIAM B. HOFFMAN, Presiding Judge, concurring in part and dissenting in part.

I concur in the majority's analysis and disposition of appellant's second assignment of error. However, I respectfully dissent from the majority's decision to overrule appellant's first assignment of error.

The majority finds, and I agree, that appellant's claim against appellee is a "covered claim" under R.C. 3955.01(D)(1). However, when analyzing "covered claim" as used in R.C. 3955.13(A), I believe it must be interpreted by reference to an individual tortfeasor, not by reference to the plaintiff's underlying cause(s) of action, which may involve claims of varying nature against multiple joint tortfeasors. The Ohio Insurance Guarantee Association Act was designed to afford protection to both insureds and third-party claimants. It was not designed to protect the guarantee fund itself. I find that the phrase "another insurer" in R.C. 3955.13(A) is limited to other solvent insurers of the individual tortfeasor whose insurer is insolvent, not the solvent insurers of other joint tortfeasors.

To find otherwise would impede the public policy favoring settlement of claims. To require exhaustion of all possible coverage of joint tortfeasors before the plaintiff may access the guarantee fund would force a plaintiff to reject any and all settlement offers by any one or more joint tortfeasors until settlement or final judgment was rendered with respect to all. To do otherwise would jeopardize the plaintiff's access to the guarantee fund. That would lead to unnecessary litigation expenses and use of valuable court time.

I further agree with appellant that to require exhaustion distorts proportional liability, making liability more a function of the total insurance coverage the joint tortfeasors have available, as opposed to each individual tortfeasor's relative faults. To that extent exhaustion contravenes or impedes the concepts of proportional contribution embodied in R.C. 2307.31(A).[1]

---

1. I find the decisions of our sister appellate courts in *Toms v. Waters* (Mar. 31, 1973), Erie Appeal No. E–92–19, unreported, 1993 WL 170973, and *Wurth v. Ideal Mut. Ins. Co.* (1987), 34 Ohio App.3d 325, 518 N.E.2d 607, of little persuasive value in light of the fact that neither case involved joint tortfeasors.