**MIELY, Appellant,**

v.

**OHIO INSURANCE GUARANTY ASSOCIATION, Appellee.**[*]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 01AP–777.

Decided Dec. 18, 2001.

---

[*] Reporter's Note: An appeal to the Supreme Court of Ohio was not allowed in 95 Ohio St.3d 1440, 2002-Ohio-2110, 767 N.E.2d 272.

334

Butler, Cincione, DiCuccio & Barnhart and N. Gerald DiCuccio, for appellant.
Vorys, Sater, Seymour & Pease, LLP, and F. James Foley, for appellee.

BOWMAN, Judge.

{¶ 1} On July 3, 1996, a complaint for medical malpractice was filed by Alan B. Ashworth against plaintiff-appellant, William R. Miely, M.D., Peter H. Edwards, M.D., Orthopedic and Trauma Surgeons, Inc. ("OTSI"), Matt Mitchell, M.D., and Grant/ Riverside Methodist Hospitals Corporation. An allegation of negligence was also made against OTSI for the negligence of its non-medical employees. At the time the complaint was filed, Miely and Edwards were insured by Physicians Insurance Exchange Mutual Insurance Company ("PIE") pursuant to a primary corporate policy issued to OTSI, which named Miely as an insured with individual coverage in the amount of $1,000,000 for each claim and corporate coverage in the amount of $3,000,000 in the aggregate. Miely and OTSI were also insured by an excess policy which named Miely as an insured in the amount of $4,000,000 for each claim and $4,000,000 annual aggregate for all claims. PIE was later declared insolvent and defendant-appellee, Ohio Insurance Guaranty Association ("OIGA") assumed limited statutory obligations to Miely pursuant to the Ohio Insurance Guaranty Association Act, R.C. 3955.01, *et seq.* ("the Act").

{¶ 2} A settlement was reached in the Ashworth case. OIGA agreed to contribute $300,000 for the claim against Miely and $300,000 for the claim against

Edwards. Grant/Riverside agreed to contribute $15,000 and OTSI paid $135,000 for the claims against its non-medical employees for a total settlement of $750,000.

{¶ 3} Miely filed this declaratory judgment action against OIGA to seek a ruling that he is not limited to the $300,000 statutory limit applicable to a single claim because he has two claims, as there were two policies, a primary and an excess policy, and the value of Ashworth's claims was more than $1,000,000. Miely also sought a declaration that he is entitled to $135,000 in attorney fees that he paid in defending himself against the Ashworth claim arguing that OIGA failed to defend the claims made against OTSI. Both parties filed motions for summary judgment.

{¶ 4} The trial court granted OIGA's motion for summary judgment finding that Miely did not personally pay any money to settle the Ashworth claim. OTSI paid $135,000 to settle the case as to the non-medical employees and charged the amount to Miely's capital account. Thus, the trial court concluded that any dispute is between Miely and OTSI, who is not a party to this action. The trial court further found that Miely was limited to a single claim for all damages alleged to have been caused when he treated Ashworth. The court reasoned that the PIE excess policy was not triggered because liability did not exceed $1,000,000 and, therefore, the limits of the PIE primary policy were not exhausted.

{¶ 5} Miely filed a notice of appeal and raises the following assignments of error:

{¶ 6} "I. The trial court erred in failing to find that the OIGA was required to assume the place of Physicians Insurance Exchange Mutual Insurance Company (PIE) for liability purposes and thereby provide liability insurance coverage to both plaintiff-appellant, William R. Miely, M.D., and non-medical and/or surgical personnel of OTSI.

{¶ 7} "II. The trial court erred in failing to find that plaintiff-appellant had only one covered claim for purposes of the OIGA Act.

{¶ 8} "III. The trial court erred in failing to find that the plaintiff-appellant's excess policy was intended to provide coverage to the plaintiff-appellant should the limits of his coverage be exhausted and that by reason of R.C. § 3955.01(D)(2)(b) those limits were exhausted.

{¶ 9} "IV. The trial court erred in finding that plaintiff-appellant did not pay $135,000.00 of his own funds to settle the medical malpractice case brought by Alan B. Ashworth."

{¶ 10} By the first assignment of error, Miely contends that the trial court erred in failing to find that OIGA was required to assume the place of PIE for

liability purposes and thereby provide liability insurance coverage to both Miely and non-medical and/or non-surgical personnel of OTSI.

{¶ 11}  In order to grant a motion for summary judgment, the court must find that, construing the evidence most strongly in favor of the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46.  A genuine issue of material fact exists unless it is clear that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion is made.  *Williams v. First United Church of Christ* (1974), 37 Ohio St.2d 150, 151, 66 O.O.2d 311, 309 N.E.2d 924.

{¶ 12}  When an appellate court reviews a trial court's disposition of a summary judgment motion, the appellate court applies the same standard as applied by the trial court.  *Maust v. Bank One Columbus, N.A.* (1992), 83 Ohio App.3d 103, 107, 614 N.E.2d 765.  An appellate court's review of a summary judgment disposition is independent and without deference to the trial court's determination.  *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153.  Thus, in determining whether a trial court properly granted a summary judgment motion, an appellate court must review the evidence in accordance with the standard set forth in Civ.R. 56, as well as the applicable law.  *Murphy.*

{¶ 13}  The purpose of R.C. 3955.01 *et seq.* is set forth in R.C. 3955.03, as follows:

{¶ 14}  "* * * [T]o provide a mechanism for the payment of covered claims under certain insurance policies, avoid excessive delay in payment and reduce financial loss to claimants or policyholders because of the insolvency of an insurer, assist in the detection and prevention of insurer insolvencies, and provide an association to assess the cost of such protection among insurers."

{¶ 15}  R.C. 3955.01 to 3955.19 shall be liberally construed to effect this purpose.  See R.C. 3955.04.  The Act provides that, when an insurer is deemed insolvent, "OIGA steps into the shoes of that insurer, assuming all of the carrier's obligations to insureds and third-party claimants.  R.C. 3955.08(A)(2) and (4)."  *Lake Hosp. Sys., Inc. v. Ohio Ins. Guar. Assn.* (1994), 69 Ohio St.3d 521, 523, 634 N.E.2d 611. The Act vests OIGA with the responsibility of providing insurance coverage when no other insurance is available to compensate valid claims.  R.C. 3955.13(A).  However, not all claims covered by the policy are payable by OIGA.  *Lake Hosp.*

{¶ 16}  R.C. 3955.01(D) defines a "covered claim" as follows:

{¶ 17} "(D)(1) * * * [A]n unpaid claim, including one for unearned premiums, which arises out of and is within the coverage of an insurance policy to which sections 3955.01 to 3955.19 of the Revised Code apply, when issued by an insurer which becomes an insolvent insurer on or after September 4, 1970, and either of the following applies:

{¶ 18} "(a) The claimant or insured is a resident of this state at the time of the insured event, provided that for the purpose of determining the place of residence of a claimant or insured that is an entity other than a natural person, the state in which its principal place of business is located at the time of the insured event shall be considered the residence of such claimant or insured.

{¶ 19} "(b) The claim is a first-party claim for property damage to an insured's property that is permanently located in this state."

{¶ 20} R.C. 3955.01(D)(2)(b) provides that a "covered claim" does not include any amount in excess of $300,000 on any claim. The claimant must first exhaust all possible recovery rights against insolvent insurers. R.C. 3955.13(A).

{¶ 21} Appellant contends that a letter from the OIGA-appointed attorney clearly indicates that OTSI did have insurance coverage through PIE; however, as any assertion made by counsel is not binding, we must look to the policy for coverage.

■ {¶ 22} Appellee argues that the primary policy at issue did not provide separate coverage to OTSI for its non-medical employees. The policy provides coverage for "professional services," not the negligence of OTSI's employees. See Section II, p. 1 of the policy. In Section XVI(F), p. 8, the PIE policy defines "insured" as "(1) All persons or entities named in the General Declarations, and (2) All professional employees as defined in this Policy." The General Declarations names OTSI and lists seven doctors and covers "medical professional liability." Thus, the policy did not provide coverage for the negligence of OTSI's non-medical employees.

{¶ 23} Miely's assignment of error also states that the trial court failed to find that OIGA also was required to provide coverage for Miely. A payment of $300,000 was made by OIGA on Miely's behalf and no argument is made concerning Miely in the brief. App.R. 12(A)(2). Miely's first assignment of error is not well taken.

■ {¶ 24} The second and third assignments of error are related and shall be addressed together. By the second assignment of error, Miely contends that the trial court erred in failing to find that he had only one covered claim for purposes of the Act. By the third assignment of error, Miely contends that the trial court erred in failing to find that the excess policy was intended to provide

coverage if the limits of the coverage of the primary policy were exhausted and that, by reason of R.C. 3955.01(D)(2)(b), those limits were exhausted.

{¶ 25} The PIE insurance policies divided the coverage for a medical malpractice claim into two layers, with the primary policy covering liability for the first $1,000,000 in damages and the excess policy covering liability for additional damages on the claim. Miely argues that, since the coverage was divided between the two policies rather than contained in one policy, Ashworth's medical malpractice claim actually asserted two claims against Miely. Thus, as he has two claims against OIGA, he should be entitled to recover twice the statutory limit. The trial court held that, even though PIE divided the coverage for a single malpractice claim into two policies, Ashworth's claim was not transformed into two claims against Miely. We agree.

{¶ 26} A "covered claim" as defined by R.C. 3955.01(D)(1) was quoted above. The policies at issue define "claim" in the same language, as follows:

{¶ 27} "* * * [A] notification to an Insured by a third party or by means of a civil proceeding, alleging injury to which this Policy coverage applies and which is reported to The Company during the Policy period." See Primary Policy, at XVI(A); Excess Policy, at XVI(A).

{¶ 28} Since Ashworth asserted only a single claim for injury, he asserted only one claim as defined by the policy.

{¶ 29} Miely contends that *Rushdan v. Baringer* (Aug. 30, 2001), Cuyahoga App. No. 78478, 2001 WL 1002255, supports his argument. In *Rushdan*, Regina Rushdan filed an action for medical malpractice against David Baringer, M.D. Baringer was insured by PIE, which provided coverage in the amounts of $1,000,000 per claim/$3,000,000 in the aggregate under a primary policy of insurance and $1,000,000 under an excess policy. After PIE was declared insolvent and ordered into liquidation, OIGA assumed the defense of the claims against Baringer. A partial settlement of the claims was reached and the total value of Rushdan's claims against Baringer was stipulated at $1,300,000. Rushdan accepted OIGA's offer of $300,000 plus a Class 2 claim in the amount of $1,000,000. Rushdan argued that she had a second covered claim pursuant to the excess policy and was entitled to a second payment of $300,000 from OIGA. The Eighth District Court of Appeals held that, by limiting a covered claim to one that arises under an insurance policy, the General Assembly intended coverage under one policy of insurance. The court continued, at 9:

{¶ 30} "* * * Consequently, if the insured had coverage under more than one policy and had that coverage been triggered under the terms of those policies so as to compensate the injured plaintiff according to the terms of a judgment or

settlement, then it follows that the same plaintiff has a covered claim under each policy.  * * *"

{¶ 31}  The court found that the General Assembly did not limit coverage to one set of circumstances or one particular event.  At first glance, these findings would seem to support Miely's position;  however, *Rushdan* is distinguishable from this case in one important aspect.  In *Rushdan*, the stipulated value of the case exceeded the limits of the primary policy and, thus, the excess policy would have provided coverage but for PIE's insolvency.  There was no similar stipulation in this case.  The court in *Rushdan* recognized this distinction and stated, at 13:

{¶ 32}  "* * * Had the reasonable settlement value been less than $1 million, coverage under the excess policy would never have been available.  Nor could the excess policy serve to 'drop down' to provide coverage if the reasonable settlement value had been more than $300,000 but less than $1 million.  See *Wurth v. Ideal Mut. Ins. Co.* [1987], 34 Ohio App.3d [325] at 328 [518 N.E.2d 607].  In such a case, OIGA's liability would have been statutorily limited to $300,000.000."

{¶ 33}  In this case, the settlement was for $750,000, which is less than the primary policy's limit of $1,000,000.  Thus, the excess policy would not have been required to provide coverage if PIE had not been insolvent and Miely was limited to one claim against OIGA. The second and third assignments of error are not well taken.

{¶ 34}  By the fourth assignment of error, Miely contends that the trial court erred in finding that he did not pay $135,000 of his own funds to settle the medical malpractice case brought by Ashworth.  OTSI paid $135,000 to settle the claim against its non-medical employees and Miely contends that OTSI charged the amount to his capital account;  thus, he paid $135,000 of his own personal funds to settle the claim.  Since OTSI is not a party to this action, any claim for conversion that Miely may have against OTSI is not involved in this case. Miely's fourth assignment of error is not well taken and the trial court did not err in granting OIGA's motion for summary judgment.

{¶ 35}  For the foregoing reasons, Miely's four assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

Judgment affirmed.

PETREE and BROWN, JJ., concur.