KATZ et al., Appellees,

v.

OHIO INSURANCE GUARANTY ASSOCIATION, Appellant.

[Cite as *Katz v. Ohio Ins. Guar. Assn.*, 150 Ohio App.3d 262, 2002-Ohio-6357.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–02–1014.

Decided Nov. 22, 2002.

Teresa L. Grigsby and James R. Jeffery, for appellee Gordon L. Katz, D.O.; J. Tracy Sniderhan, for appellee Susan Robinson.

F. James Foley and Julie M. Larson, for appellant.

MELVIN L. RESNICK, Judge.

{¶ 1} In this appeal from a judgment of the Lucas County Court of Common Pleas, we must determine whether the trial court erred in granting summary judgment to plaintiffs-appellees, Gordon L. Katz, D.O., and Susan Robinson, administrator of the estate of Teri Sue Robinson. For the following reasons, we affirm the judgment of the trial court.

{¶ 2} After the death of her daughter, Teri Sue Robinson, Susan Robinson, in her capacity as the administrator of her daughter's estate, filed a wrongful death and survival action against Dr. Donald Stepniewski and Dr. Katz. The lawsuit is based upon the doctors' alleged medical malpractice in timely failing to diagnose and treat Teri Sue Robinson's cancer. The wrongful death cause of action is brought on behalf of the decedent's mother, father, and brother. Dr. Katz denied any liability.

{¶ 3} During the relevant period, Dr. Katz was an insured under both primary and excess medical liability policies issued by P.I.E. Mutual Insurance Company ("PIE"). The primary insurance policy provides liability coverage of $200,000 for "each claim," with an aggregate limit of $600,000. The excess insurance policy provides additional liability coverage if a claim exceeds the $200,000 limit of the primary policy up to an aggregate limit of $1 million.

{¶ 4} Dr. Katz was initially represented in the wrongful death and survival action by PIE. However, when PIE became insolvent, claims for which PIE provided coverage were then subject to the Ohio Insurance Guarantee Association Act, R.C. Chapter 3955. Thus, the determination of whether Dr. Katz had a single "covered claim" or multiple "covered claims" within the meaning of his PIE primary and excess medical liability insurance policies fell to the nonprofit unincorporated association known as the Ohio Insurance Guaranty Association ("OIGA"). See R.C. 3955.06 and 3955.08.

{¶ 5} Despite Dr. Katz's request to the contrary, OIGA decided that it was "statutorily limited to pay a single claim at a maximum payment of $300,000 in the event that a judgment is entered against Dr. Katz for that amount or more." Accordingly, Dr. Katz commenced the instant declaratory judgment action seek-

ing an order declaring that OIGA has a duty to provide him coverage in the statutory claim limit for each of the separate claims asserted in the wrongful death and survival action. Specifically, he asked the court to find that he has coverage for each claim of the three beneficiaries of the decedent's estate and for the survival claim.

{¶ 6} Susan Robinson was later joined as a party to this cause as an intervening plaintiff. All parties filed motions for summary judgment. Dr. Katz and Robinson argued that coverage for multiple claims existed under both the primary and excess PIE medical liability policies. On the other hand, OIGA, citing the limiting language of the PIE insurance policy and statutory law, maintained that Dr. Katz had a single claim for $200,000 under the PIE primary policy and an additional $100,000 under the PIE excess policy.

{¶ 7} On December 20, 2001, the trial court granted appellees' motions for summary judgment. Relying on Ohio cases involving the number of claims allowed in wrongful death actions, the court found that there were four separate "covered claims" under the primary policy, each with a coverage of $200,000 and an aggregate limit of $600,000. Further, the court held that "if any claim under the primary policy * * * exceeds $200,000, that claimant is entitled to an additional claim under the excess policy, with a total aggregate amount of $1 million * * *."

{¶ 8} OIGA disagrees with the common pleas court's judgment and asserts the following assignments of error:

{¶ 9} "The trial court erred when it held that a medical malpractice lawsuit alleging physical injury to one person constitutes four separate covered claims against OIGA, when appellee's insurance policy defined all losses from physical injury to one person as a *single* claim subject to the single claim limit of liability.

{¶ 10} "The trial court erred when it held that the use of a primary and an excess insurance policy, to provide coverage for different layers of a medical malpractice claim, transforms that claim into two separate covered claims and entitles the claimant to recover up to twice the statutory maximum amount from OIGA if the insurer becomes insolvent."

{¶ 11} The standard applicable to OIGA's assignments of error is found in Civ.R. 56(C), which provides that summary judgment is appropriate only where no genuine issue of material fact remains to be litigated, the moving party is entitled to judgment as a matter of law, and, viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, which is adverse to the nonmoving party. See, also, *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 65–66, 8 O.O.3d 73, 375 N.E.2d 46.

{¶ 12}   In its first assignment of error, OIGA presents two reasons why the trial court erred in finding that Dr. Katz had more that one claim under the PIE primary and excess insurance policies.

{¶ 13}   OIGA initially points to Part V of the PIE primary insurance policy, which reads in part:

{¶ 14}   "The Limits of Liability of [PIE] are as follows:

{¶ 15}   "A. AS TO EACH CLAIM

{¶ 16}   "The Limit of Liability stated in the General Declarations, as to 'each claim,' is the limit of [PIE's] liability for all damages because of any one claim or suit or all claims or suits first made during the policy period because of injury to or death of any one person * * *." The coverage in the excess policy is provided "in accordance with the applicable provisions of the underlying insurance."

{¶ 17}   OIGA argues that these provisions are valid and enforceable and that the trial court erred in applying *Savoie v. Grange Mut. Ins. Co.* (1993), 67 Ohio St.3d 500, 620 N.E.2d 809, in order to circumvent the cited limiting language.

{¶ 18}   In its judgment, the trial court noted that the statute, R.C. 3937.44, permitting an insurer to limit its liability to a single claim in wrongful death actions was not effective until October 20, 1994. The lower court determined that the PIE insurance policies in this cause were entered into on July 1, 1994. Finding that the statutory law in effect at the time of contracting or renewal defines the scope of a liability insurance policy, see *Ross v. Farmers Ins. Group of Cos.* (1998), 82 Ohio St.3d 281, 287–288, 695 N.E.2d 732, the court below held that R.C. 3937.44 was inapplicable in this instance. Therefore, and lacking any case law specifically addressing the number of covered claims in a wrongful death action based upon the death of one person allegedly due to medical malpractice, the trial court turned to the first paragraph of the syllabus in *Savoie*, a wrongful death action involving limits on liability in a motor vehicle policy.

{¶ 19}   We concur with the trial court in finding that R.C. 3937.44 cannot be applied to this cause. See R.C. 1.48 ("[a] statute is presumed to be prospective in its operation unless expressly made retrospective") and *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 522 N.E.2d 489, paragraph one of the syllabus. The legislature did not express any intent that R.C. 3937.44 is to be applied retrospectively. Accord *Jones v. U.S.A.A. Ins. Co.* (Mar. 31, 2000), Lake App. No. 98–L–253, 2000 WL 522292. Consequently, the question then becomes whether the court erred as a matter of law in applying the rule set forth in *Savoie*.

{¶ 20}   The first paragraph in the syllabus of *Savoie* reads:

{¶ 21}  "1. Each person who is presumed to have been damaged as a result of a wrongful death claim may, to the extent of his or her damages, collect from the tortfeasor's liability policy up to its per person limits subject to any per accident limit.  Liability policy provisions which purport to consolidate wrongful death damages suffered by individuals into one 'each person' policy limit are unenforceable.  (*State Farm Auto. Ins. Co. v. Rose* [1991], 61 Ohio St.3d 528, 575 N.E.2d 459, and paragraphs one and two of the syllabus of *Burris v. Grange Mut. Cos.* [1989], 46 Ohio St.3d 84, 545 N.E.2d 83, overruled; *Wood v. Shepard* [1988], 38 Ohio St.3d 86, 526 N.E.2d 1089, applied and followed.)"

{¶ 22}  As noted by the trial court, the language in this paragraph is sufficiently broad to encompass all forms of insurance.  Appellant asserts, however, that the trial court was incorrect because the first paragraph of the *Savoie* syllabus (1) applies and follows *Wood v. Shepard,* a case which held that an automobile insurance policy limiting all claims in a wrongful death action was unenforceable because it violates R.C. 3937.18, the statute requiring an insurer to offer uninsured and underinsured motorist coverage;  and (2) relies upon "each person" limits of liability, a provision that is unique to motor vehicle insurance policies.  We disagree with these contentions.

{¶ 23}  First, the central issue in *Wood v. Shepard* was whether each person entitled to damages in a wrongful death action brought pursuant to R.C. 2125.02 has a separate claim under the provisions of an insurance policy and whether the insurer could make such separate claims subject to the single-person limit of liability in the policy.  The Supreme Court of Ohio found that each party damaged did have a separate claim and that the attempt to limit those claims to the single-person limit in the policy was invalid and unenforceable.  Id. at the syllabus.

{¶ 24}  While the *Wood* court relied, in part, on the uninsured/underinsured motorist statute, R.C. 3937.18, in effect at the time, to find that insurers could not limit the number of claims, its main consideration was the fact that each survivor in a wrongful death action is "statutorily afforded a separate claim for damages." Id., 38 Ohio St.3d at 91, 526 N.E.2d 1089.  Moreover, in a wrongful death and survival action based on negligence, the Cuyahoga County Court of Appeals held that, predicated on the holdings in *Wood* and *Savoie,* each of a decedent's survivors has a separate claim for damages and that the survival claim for the decedent's pain and suffering was also a separate and distinct claim.  See *Dickerson v. Thompson* (1993), 89 Ohio App.3d 399, 624 N.E.2d 784.  Thus, we reject the proposition that *Savoie* cannot be applied to the instant cause because it follows *Wood.*

{¶ 25}  Second, we turn to the issue of whether *Savoie* can be distinguished from the present case because the *Savoie* syllabus is limited to those insurance

policies with "each person" limits of liability, which are unique to motor vehicle insurance policies.

{¶ 26} We concede that the first syllabus in *Savoie* employs the phrase "each person," as used in the motor vehicle policy in the case before it. Nonetheless, we do not believe that the syllabus should be limited to such a case. We must be mindful of the Ohio Supreme Court's deference to the purpose behind R.C. Chapter 2125 to provide a means whereby surviving spouses, children, and parents can recover for the loss of a family member by wrongful death. See *Brookbank v. Gray* (1996), 74 Ohio St.3d 279, 284, 658 N.E.2d 724, quoting *Garza v. Maverick Market, Inc.* (Tex.1989), 768 S.W.2d 273, 275. Further, the wrongful death statute is "remedial in nature, and should be construed liberally." *Ramage v. Cent. Ohio Emergency Serv., Inc.* (1992), 64 Ohio St.3d 97, 105, 592 N.E.2d 828.

{¶ 27} Based upon the foregoing, the fact that the medical professional insurance policies in the present case speak in terms of "each claim" rather than "each person" does not mean that OIGA can thwart the remedial purpose of the wrongful death statute by finding *Savoie* inapplicable to this cause. Specifically, the limits-of-liability provision in the *Savoie* case has the same effect as the limits-of-liability clause in the present case. That is, liability in both wrongful death actions is limited to one claim arising from bodily injury or death sustained by one person. For all of the foregoing reasons, we find OIGA's first argument without merit. The trial court did not err in finding the limits-of-liability clause in the primary insurance policy in this case invalid and unenforceable.

{¶ 28} The second contention raised by OIGA is that the trial court "erred as a matter of law when it held that the decision in *Savoie*, supra, authorizes Dr. Katz to evade the statutory limit in this case." Even though our perusal of the trial court's judgment does not reveal such a finding, the trial court did ignore the impact of R.C. Chapter 3955 on its decision.

{¶ 29} The Ohio Insurance Guaranty Association Act, R.C. Chapter 3955, is designed to protect insureds and third-party claimants from a potentially catastrophic loss due to the insolvency of a member insurer. *PIE Mut. Ins. Co. v. Ohio Ins. Guar. Assn.* (1993), 66 Ohio St.3d 209, 611 N.E.2d 313, paragraph one of the syllabus. To further this purpose, the statute is to be construed liberally. R.C. 3955.04.

{¶ 30} The OIGA is the statutory mechanism created by the legislature for, among other things, the payment of covered claims under certain insurance policies. R.C. 3955.03. Thus, when an insurer becomes insolvent, the OIGA assumes all of the insurer's obligations to the insured and to third-party claimants. R.C. 3955.08(A)(2) and (4); *Lake Hosp. Sys., Inc. v. Ohio Ins. Guar. Assn.* (1994), 69 Ohio St.3d 521, 523, 634 N.E.2d 611.

{¶ 31} R.C. 3955.01(D) provides, in part, that a "covered claim" is:

{¶ 32} "(1) * * * An unpaid claim, * * * which arises out of and is within the coverage of an insurance policy to which sections 3955.01 to 3955.19 of the Revised Code apply, when issued by an insurer which becomes an insolvent insurer on or after September 4, 1970, and * * * the following applies:

{¶ 33} "(a) The claimant or insured is a resident of this state at the time of the insured event, provided that for the purpose of determining the place of residence of a claimant or insured that is an entity other than a natural person, the state in which its principal place of business is located at the time of the insured event shall be considered the residence of such claimant or insured."

{¶ 34} R.C. 3955.01(D)(2)(b) states that a "covered claim" does not include any amount in excess of $300,000 on any claim. Therefore, an individual may receive protection up to the $300,000 limit of coverage per claim without fear of an insurer's insolvency. *Vickers v. Howe* (1998), 123 Ohio App.3d 456, 462, 704 N.E.2d 344. However, the statute does not state that in a case, such as the one before us, where multiple claims arise as the result of a wrongful death action, the survivors who are entitled to damages are limited to one $300,000 claim.

{¶ 35} Although there is a paucity of Ohio case law on the issue of whether all claims in a wrongful death action are limited under R.C. Chapter 3955 to one insurance claim of $300,000, a recent West Virginia case discusses the question of whether separate and distinct claims arising from the personal injury to or death of one person as the result of medical malpractice are each covered claims within the meaning of the West Virginia Insurance Guaranty Act. See *West Virginia Ins. Guar. Assn. v. Potts* (W.Va.2001), 209 W.Va. 682, 550 S.E.2d 660.

{¶ 36} The West Virginia Insurance Guaranty Act is almost identical to the Ohio Insurance Guaranty Act in its definition of a "covered claim," id. at 686, 550 S.E.2d 660, and has the same statutory cap of $300,000, id. at 684, 550 S.E.2d 660. The *Potts* court found that the primary objective in construing a statute is to determine legislative intent. Id. at 688, 550 S.E.2d 660. The court reasoned that the state guaranty Act refers to covered "claims" rather than covered "occurrences." Id. at 686–687, 550 S.E.2d 660. Thus, if the legislature had intended the statutory cap to apply to "occurrences," that is, $300,000 for all claims arising in a personal injury or wrongful death action, it would have employed that term instead of "claims." Id. at 688, 550 S.E.2d 660.

{¶ 37} In Ohio, we too have an obligation to construe a statute so as to give effect to the intention of the Ohio General Assembly. *Christe v. GMS Mgt. Co.* (2000), 88 Ohio St.3d 376, 726 N.E.2d 497. R.C. 3955.01(D), like the statute involved in the *Potts* case, sets the statutory limit of $$300,000 for "claims" rather than "occurrences." We therefore conclude that it was the intent of the Ohio

General Assembly to impose the $300,000 statutory limit on each claim made by a person entitled to damages in a wrongful death action. Thus, the trial court did not err in declaring that there were a total of four "covered claims" against the primary policy, each with a maximum coverage amount of $200,000 and an aggregate limit of $600,000. Accordingly, OIGA's first assignment of error is found not well taken.

{¶ 38} In its second assignment of error, OIGA maintains that the trial court erred as a matter of law in finding that each claimant is entitled to an additional covered claim of up to $300,000, with an aggregate limit of $1 million, under Dr. Katz's PIE excess medical professional liability insurance policy.

{¶ 39} A declaratory judgment action is an "appropriate means to establish the obligations of an insurer in a controversy between it and its insured as to the fact or extent of liability under a policy." *Gargallo v. Nationwide Mut. Ins. Co.* (Mar. 7, 2002), Franklin App. No. 01AP–710, 2002-Ohio-1009, 2002 WL 356321, citing *Lessak v. Metro. Cas. Ins. Co. of New York* (1958), 168 Ohio St. 153, 155, 5 O.O.2d 442, 151 N.E.2d 730. Here, as he does with his primary policy, Dr. Katz seeks a declaration of the number of claims provided with coverage under his excess medical professional liability policy.

{¶ 40} In construing an insurance contract, we must look at the language of the contract to determine the intent of the parties. *Chicago Title Ins. Co. v. Huntington Natl. Bank* (1999), 87 Ohio St.3d 270, 273, 719 N.E.2d 955. "We look to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy." Id.

{¶ 41} A "claim" is separately defined in the excess insurance policy as "a notification to an Insured by a third party or by means of a civil proceeding, alleging injury to which this Policy coverage applies and which is reported to The Company during the Policy period." OIGA insists that because this definition of "claim" is identical to that found in the primary insurance policy, only one notification is required under both policies. Thus, OIGA concludes that one claim asserted under the primary policy is a single, combined claim under both policies. We totally reject this reasoning.

{¶ 42} We further find that the cases, *Rushdan v. Baringer* (Aug. 30, 2001), Cuyahoga App. No. 78478, 2001 WL 1002255, and *Miely v. Ohio Ins. Guar. Assn.* (2001), 147 Ohio App.3d 333, 770 N.E.2d 619, cited by both parties are distinguishable from this cause on the question of the number of covered claims under the excess policy. Both *Rushdan* and *Miely* involve a single claim for medical malpractice against each doctor in each respective suit. Furthermore, the *Rushdan* and *Miely* courts based their decisions on whether or not the value of each case exceeded the limit of the primary PIE medical professional liability

policy. We cannot employ such a standard because no settlement or judgment exists in this cause. Nor do we believe that this standard should be applied in cases such as this one. Rather, we are of the opinion that our focus should be, as it is in dealing with the primary policy, on the number of covered claims permitted by the excess policy, regardless of the lack of a specific damages figure. Cf. *Stanich v. Ohio Ins. Guar. Assn.* (Sept. 25, 2002), Mahoning App. No. 01 CA 102, 2002-Ohio-5198, 2002 WL 31163647 (finding that because there was no settlement or judgment for damages, the physician's request for coverage under his excess insurance policy should be "denied").

{¶ 43} In applying this standard, we have already concluded that this cause involves a wrongful death and survival action containing four separate and distinct claims that cannot be limited to a single claim in the PIE primary policy. Additionally, the limits-of-liability clause in Dr. Katz's excess policy does not attempt to limit the number of claims raised to a single claim under that policy. Therefore, we find that the trial court did not err as a matter of law in finding that each of the four claims raised in this cause was also a covered claim under the PIE excess medical professional liability policy. OIGA's second assignment of error is found not well taken.

{¶ 44} On consideration whereof, this court finds that substantial justice was done the party complaining, and the judgment of the Lucas County Court of Common Pleas is affirmed. OIGA is ordered to pay the costs of this appeal.

Judgment affirmed.

MARK L. PIETRYKOWSKI, P.J., and RICHARD W. KNEPPER, J., concur.